**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEBRASKA**
**LINCOLN DIVISION**

| | |
|---|---|
| CATHERINE PALMER, individually and on behalf of others similarly situated, | ) CASE NO. 4:19-CV-3084 |
| | ) JUDGE JOHN M. GERRARD |
| | ) |
| Plaintiff, | ) MAGISTRATE JUDGE MICHAEL D. |
| vs. | ) NELSON |
| | ) |
| KCI USA, INC., | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED CLASS ACTION COMPLAINT**

**Introduction**

The Telephone Consumer Protection Act ("TCPA") prohibits "any person" from making "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) by using any automatic telephone dialing system or an artificial or prerecorded voice" to "any telephone number assigned to a . . . cellular telephone service[.]" 47 U.S.C. § 227(b)(1)(A)(iii).

Against this backdrop, Catherine Palmer ("Plaintiff") alleged that KCI USA, Inc. ("KCI") violated the TCPA by placing calls to her cellular telephone number, and the cellular telephone numbers of the members of her proposed class, by using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice, without prior express consent. More specifically, Plaintiff alleged that Defendant's calls to her cellular telephone number, and the cellular telephone numbers of the members of her proposed class, were wrong number calls intended for recipients other than Plaintiff and the members of her proposed class, and thus violated the TCPA. *Accord N. L. by Lemos v. Credit One Bank, N.A.*, 960 F.3d 1164, 1167 (9th Cir. 2020) ("intent to call a

1

customer who had consented to its calls does not exempt [the caller] from liability under the TCPA when it calls someone else who did not consent").[1]

Correspondingly, Plaintiff proposed the following class definition: "All persons and entities throughout the United States (1) to whom KCI USA, Inc. placed, or caused to be placed, a call directed to a number assigned to a cellular telephone service, but not assigned to the intended recipient of KCI USA, Inc.'s calls, (3) by using an automatic telephone dialing system or an artificial or prerecorded voice, (4) from four years prior to the date of this complaint through and including the date of class certification."

But just weeks ago, and for the first time, Defendant testified that it lacks prior express consent to place ATDS and artificial or prerecorded voice calls to most all cellular telephone numbers to which it places calls—not just wrong or reassigned numbers. As such, Plaintiff seeks leave to file an amended complaint to allege that Defendant not only violated the TCPA by placing ATDS and artificial or prerecorded voice calls to wrong or reassigned cellular telephone numbers absent prior express consent, but also that Defendant violated the TCPA, as a blanket pattern and practice, by placing ATDS and artificial or prerecorded voice calls to cellular telephone numbers generally, absent prior express consent.

Correspondingly, Plaintiff seeks leave to include the following additional class definition in her amended class action complaint: "All persons and entities throughout the United States (1)

---

[1]     *See also Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014) (explaining that only the current subscriber to a cellular telephone number can provide valid consent to receive calls made by an ATDS); *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 641 (stating that "[c]onsent to call a given number must come from its current subscriber"); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 2015 WL 4387780 (F.C.C. July 10, 2015) (clarifying that the "called party" who must provide prior express consent "is the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan").

to whom KCI USA, Inc. placed, or caused to be placed, a call directed to a number assigned to a cellular telephone service, (3) by using the Cisco Unified Contact Center Enterprise dialing system, or an artificial or prerecorded voice, (4) from August 19, 2015 through the date of class certification."

Relatedly, Plaintiff seeks leave to add detail regarding Defendant's dialing practices. For example, Plaintiff plans to refer to Defendant's particular dialing system—the Cisco Unified Contact Center Enterprise dialing system—throughout her amended class action complaint, as opposed to referring more generally to Defendant's use of an ATDS.

Given these new facts recently learned through discovery, good cause exists for Plaintiff to amend her complaint. Moreover, the amendment will not impact any remaining case deadlines.

### Relevant Facts and Procedure

On October 9, 2019, Plaintiff filed her class action complaint against Defendant, ECF No. 1, through which she alleged that Defendant violated the TCPA by using an ATDS or an artificial or prerecorded voice to place calls to wrong or reassigned telephone numbers, without prior express consent. *See id.*, ¶¶ 1-3, 33, 58, 70-71. Plaintiff included in her original class action complaint the following proposed class definition:

> All persons and entities throughout the United States (1) to whom KCI USA, Inc. placed, or caused to be placed, a call directed to a number assigned to a cellular telephone service, but not assigned to the intended recipient of KCI USA, Inc.'s calls, (3) by using an automatic telephone dialing system or an artificial or prerecorded voice, (4) from four years prior to the date of this complaint through and including the date of class certification.

*Id.*, ¶ 47.

On October 28, 2019—less than three weeks after she filed her class action complaint—Plaintiff served Defendant with written discovery requests targeted, in part, to elicit information and documents regarding prior express consent Defendant believes it has to place calls to telephone

numbers by using an ATDS or an artificial or prerecorded voice. *See, e.g.*, Plaintiff's Initial Written Discovery Requests, attached as Exhibit 1, at Request for Production No. 19 ("For the telephone numbers [at issue] documents and electronically stored information evidencing express consent Defendant had to make, or cause to be made, communications, or attempted communications, to the telephone numbers, by using an automatic telephone dialing system, a predictive dialer, or an artificial or prerecorded voice.").

On February 10, 2020—more than three months after Plaintiff served Defendant with her initial written discovery requests—Defendant responded: "Subject to and without waiving the foregoing objections, KCI states: Attached." Defendant, however, never actually attached any document responsive to Plaintiff's Request for Production No. 19. *Accord* Transcript of Michelle Hahn, attached as Exhibit 2, at 116:6-23 ("[Q.] 19 says: For telephone numbers identified through [D]efendant's answers to previous interrogatories and requests for production, documents and electronically stored information evidencing express consent defendant had to make or caused to be made communications or attempted communications to the telephone numbers by using what amounts to the Cisco dialing system and a prerecorded voice. And [Defendant] responds with an objection, but they also state, it also states, that subject and to and without waiving the foregoing objection [Defendant] states attached. Now, I'm not aware of any document that I can tell attached that is responsive. Do you know what document KCI is referring to when it says attached? A. I do not.").[2]

---

[2]    Testimony pursuant to Rule 30(b)(6) "bind[s] the corporation on the noticed subjects." *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000).

In hindsight, this is not surprising given that on July 29, 2020[3] Defendant made Plaintiff aware—for the first time—that it does not obtain from the intended recipients of its calls prior express consent to place calls to their telephone numbers by using an ATDS or an artificial or prerecorded voice. Rather, Defendant simply assumes it has prior express consent to do so:

> [Q.]   My question, first, is does or did [Defendant] document or really otherwise memorialize a person's express consent to receive communications by way of the Cisco dialer anywhere in its dialer or HERO notes?
>
> MR. KRUEGER:  Object to form. Michelle, you can answer.
>
> A.   As we discussed earlier, we don't have direct consent from the patient.  It's assumed through the fact that a requester has ordered our product in order to help treat a patient. Therefore, we would contact them for usage.
>
> Q.   Okay.  I understand.  So then I guess it's probably just sort of logically concluded that there's no actual consent designation or notes for a specific customer in [Defendant's] records; is that right?
>
> A.   Correct.

Exhibit 2 at 117:8-118:1; *accord* 33:15-35:7 (explaining that persons to whom Defendant places calls generally do not directly provide personal contact information to Defendant); *id*. at 87:21-

---

[3]   As relevant background, on March 5, 2020 Plaintiff provided Defendant with a draft notice of deposition pursuant to Rule 30(b)(6), and asked for dates on which one or more of Defendant's representatives was able to provide testimony regarding the listed topics. Defendant's counsel responded: "First of all, thank you for the deposition notice recently served as to [Defendant]. We are consulting with our client as to available dates and will revert back to you by early next week with some proposed dates." But Defendant's counsel did not "revert back." So on May 27, 2020 Plaintiff served Defendant with a notice of deposition pursuant to Rule 30(b)(6), which set a June 11, 2020 deposition date. On May 28, 2020 Defendant's counsel responded: "Received and I had been contemporaneously working with client on available dates. I do not think that the 11th will work, but I will have an alternate date for you by eow. Thanx. ELZ." Again, however, Defendant's counsel failed to respond, much less provide an "alternate date." And only after more than one additional follow-up request did Defendant offer July 22, 2020 as a date on which it could provide the testimony requested. Accordingly, on July 10, 2020 Plaintiff served Defendant with an amended notice of deposition pursuant to Rule 30(b)(6), which set a July 22, 2020 deposition date. Subsequently, per Defendant's request, the deposition was moved out another week until July 29, 2020.

90:1 (explaining that as a matter of pattern and practice Defendant does not obtain prior express consent to place calls to telephone numbers directly from the intended recipient of its calls); *see, e.g.*, *id*. at 132:25-133:3 ("Q. And the assumption we're working with is that ███████ gave the telephone number at issue to the requester; is that fair? A. Yes."); *id*. at 88:20-89:1 ("Q. Okay. So -- and just put this in a nutshell: [Defendant] never obtained express consent to place calls to the telephone number at issue directly from ██████, did it? . . . . A. Not that I'm aware of.").

Accordingly, Defendant characterizes the consent it purports to obtain to place calls to telephone numbers by using an ATDS or an artificial or prerecorded voice as implied consent:

> Q.     So how does -- so let's just take, for example, a third-party caregiver, and that caregiver provided a [Defendant]'s customer's number to [Defendant], how does [Defendant] know that any consent that the caregiver obtained to call the number applies to [Defendant]?
>
> MR. KRUEGER:  Same objection, and to the extent it calls for a legal conclusion. Michelle, you can answer.
>
> A.     So if they are providing us with the patient's information in order to provide the patient with a product the implied consent, I believe, would apply to [Defendant] because they're using our product.
>
> Q.     Okay.  But that's implied, is the way you look at it?
>
> A.     Correct.

*Id*. at 130:21-131:12; *see also id*. at 130:13-17 (explaining that Defendant does *not* "know if a third-party caregiver specifically gets consent for KCI to call a telephone number by using an artificial voice or a prerecorded voice.").

Remarkably—given Defendant's understanding that it obtains only implied, as opposed to express consent, to place calls by using an ATDS or an artificial or prerecorded voice—Defendant does *not* "do anything to independently verify that third parties, such as caregivers who provided a customer's telephone number to [Defendant], actually obtain consent from the customer to dial

6

the telephone number by way of an automatic telephone dialing system or a prerecorded voice." *Id*. at 128:16-129:3. Similarly, Defendant did *not* "throughout the relevant time period, ever independently review the manner in which third parties, such as a caregiver who provided a customer's telephone number to [Defendant], obtain consent from the customer to dial the telephone number by using an automatic telephone dialing system or a prerecorded voice." *Id*. at 129:4-20. Along the same line, Defendant did *not* "throughout the relevant time period, ever independently review language that third parties, such as a caregiver who provided customers telephone number to KCI, use to obtain consent from the customer to dial that number, for example, by an automatic telephone dialer or prerecorded voice." *Id*. at 129:21-130:7.

### Argument

Because Plaintiff seeks leave to amend her class action complaint after the corresponding deadline established by this Court's case progression order, *see* ECF No, 26 at 1, she must satisfy both Rule 16(a)(4) and Rule 15(a)(2).

### I.    Plaintiff satisfies Rule 16(a)(4)'s good cause standard to modify the deadline to amend pleadings.

Rule 16 states that "a schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see also Jacobs v. Fareportal, Inc.*, 8:17CV362, 2018 WL 6107064, at *1 (D. Neb. Nov. 21, 2018) (Zwart, M.J.) ("The good cause requirement applies to modifying the deadlines in a case scheduling order. Fed. R. Civ. P. 16(b)(4)."). And as this Court explained, "[t]he movant's level of diligence and the degree of prejudice to the parties are both factors to consider when assessing if good cause warrants extending a case management deadline, with the movant's diligence being the first consideration and the extent of prejudice to either party considered only following a requisite threshold finding of due diligence." *McDonald Apiary, LLC v. Starrh Bees, Inc.*, 8:14-CV-351, 2016 WL 4919885, at *2 (D. Neb. Sept. 14, 2016) (Gerrard,

J.); *see also Carefusion 213, LLC v. Prof'l Disposables, Inc.*, No. CIV.A. 09–2616–KHV, 2010 WL 4004874, at 3-4 (D. Kan. Oct. 12, 2010) ("To establish good cause under Rule 16(b)(4), the moving party must show that the amendment deadline could not have been met even if it had acted with due diligence.").

It follows, therefore, that good cause under Rule 16(b)(4) exists where a party seeks leave to file an amended complaint, without unreasonable delay, based upon new information learned through the discovery process. *See, e.g.*, *McDonald*, 2016 WL 4919885, at *2 (finding good cause to allow an amendment beyond the progression deadline in light of "newly discovered facts"); *United States v. Copar Pumice Co.*, No. CIV. 09-1201 JP/RLP, 2013 WL 9601485, at *5 (D.N.M. July 30, 2013) ("[T]he United States has the right to amend its complaint in light of new information gained through discovery if it supports the proposed amendment and explains the delay in seeking leave to amend.").

Here, on July 29, 2020, Defendant made Plaintiff aware—for the first time—that it does not obtain prior express consent from the intended recipients of its calls, to place calls to their cellular telephone numbers by using an ATDS or an artificial or prerecorded voice. That is, just weeks ago—despite Plaintiff's October 28, 2019 formal request for information and documents regarding prior express consent relevant to Plaintiff's and the proposed class members' claims in this matter, and notwithstanding Plaintiff's March 5, 2020 request for related testimony—Defendant made Plaintiff aware that it obtains only "assumed" or "implied" consent to place calls by using an ATDS or an artificial or prerecorded voice, as opposed to prior express consent. And this is significant as prior "express" consent is legally distinct from prior "implied" consent. *See Kolinek v. Walgreen Co.*, No. 13 C 4806, 2014 WL 3056813, at *4 (N.D. Ill. July 7, 2014) ("The 'rule' that the Court had erroneously found in the FCC 2008 Order amounted to a version of

implied consent. But that is not what the statute requires; it says that prior *express* consent is needed."); *Thrasher-Lyon v. CCS Commercial, LLC*, No. 11 C 04473, 2012 WL 3835089, at *5 (N.D. Ill. Sept. 4, 2012) ("Bizarre would be to read 'express consent' as 'implied consent.' In ordinary parlance, there is no such thing as 'implied express consent'—that is an oxymoron."); *Leckler v. CashCall, Inc.,* 554 F. Supp. 2d 1025, 1029 (N.D. Cal. 2008) (explaining that the statutory construction in question was manifestly contrary to the language of the TCPA because it amends "prior express" to "prior express *or implied* "), *vacated on other grounds,* 2008 WL 5000528 (N.D. Cal. Nov.21, 2008); *Travel, Kirkwood, Inc. v. Jen N.Y. Inc.*, 206 S.W.3d 387, 392 (Mo. App. 2006) ("implicit consent is insufficient under the law"); *Chair King, Inc. v. GTE Mobilnet of Houston, Inc.*, 135 S.W.3d 365, 394 (Tex. App. 2004) ("permission [would be] based on an inference, and, as such, seems to conflict with the TCPA's requirement that the invitation or permission be express"), *rev'd on other grounds,* 184 S.W. 3d 707 (Tex. 2006).

Relatedly, the Federal Communications Commission ("FCC"), the agency tasked with implementing the TCPA, found that telephone numbers provided for use with one account cannot be used as prior express consent to make prerecorded or automated calls regarding another account. *See In re Rules & Regs. Implementing the Telephone Consumer Protection Act*, 31 FCC Rcd. 9054, at ¶32 (Aug. 4, 2016); *id.* at ¶¶ 17-19, 29, 30.

Considering this, Plaintiff has good cause under Rule 16(b)(4) to modify this Court's scheduling order—which set January 15, 2020 as the deadline for moving to amend pleadings, *see* ECF No. 26 at 1—for purposes of seeking leave to file an amended class action complaint.

## II.    Plaintiff satisfies Rule 15(a)(2)'s liberal standard to amend pleadings.

Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave [to amend] when justice so requires." *Willstrop v. Prince Mktg. LLC*, 8:17CV350, 2020

WL 1550237, at *2 (D. Neb. Apr. 1, 2020) (Zwart, M.J.) (observing "liberal Rule 15(a) amendment standard"); *see also Houweling's Nurseries Oxnard, Inc. v. Robertson*, No. 214CV00611JNPPMW, 2016 WL 7496114, at *1 (D. Utah Dec. 30, 2016) (same).

Under Rule 15(a), "absent a good reason for denial—such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of amendment—leave to amend should be granted." *Kozohorsky v. Harmon*, 332 F.3d 1141, 1144 (8th Cir. 2003). And a motion to amend should be denied on the merits "only if it asserts clearly frivolous claims or defenses." *Gamma–10 Plastics, Inc. v. Am. President Lines*, 32 F.3d 1244, 1255 (8th Cir. 1994) (quotations and citations omitted).

Further, "likelihood of success on the new claim or defense is not a consideration for denying leave to amend unless the claim is clearly frivolous" "or legally insufficient on its face." *Becker v. Univ. of Neb.*, 191 F.3d 904, 908 (8th Cir. 1999). "The party opposing such amendment ha[s] the burden of establishing that leave to amend would be . . . futile." *Tracy Broad. Corp. v. Spectrum Scan*, 8:06CV336, 2006 WL 3240712, at *1 (D. Neb. Nov. 7, 2006) (Thalken, M.J.).

Additionally, courts are to be "mindful of the liberal policy toward amendments and the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities." *Id*. (quotations omitted).

Here, there exists no "good reason" to deny Plaintiff leave to amend her class action complaint. There is no undue delay, as Plaintiff wasted no time in seeking leave to amend her complaint following the discovery of new evidence that Defendant lacks prior express consent to place ATDS and artificial or prerecorded voice calls to most cellular telephone numbers to which it places calls—not just wrong or reassigned numbers. *See supra* Argument at § I; *see also Doyle v. Eli Lilly & Co.*, 8:06CV412, 2008 WL 215802, at *2 (D. Neb. Jan. 24, 2008) (no undue delay

even though "motion to amend [was] outside the deadline initially imposed by the court by over one year" since the "plaintiffs provide good cause for the motion" where defendant failed to disclose certain information in discovery). Prejudice is lacking given that no trial date is yet set, *see Patton v. Guyer,* 443 F.2d 79, 86 (10th Cir. 1971) (finding that there was no prejudice because the amendment was authorized several months prior to trial), and that Plaintiff's proposed amended claim stems from the same factual allegations, and involves the same subject matter, found in Plaintiff's original class action complaint. *See, e.g.*, *McDonald,* 2016 WL 4919885, at *3 ("the new allegations and claims are closely related to already-pending issues, and do not materially alter the nature of this case"); *Smith v. Chrysler Corp.*, 938 F. Supp. 1406, 1412 (S.D. Ind. 1996) (granting leave to amend complaint and finding no prejudice to defendant since plaintiff was merely "amend[ing] the complaint to conform to the evidence revealed" in discovery and the facts "added support the different types of claims presented, but not to the extent that the defendants would have to start all over again with discovery."); *Childers v. Indep. Sch. Dist. No. 1,* 676 F.2d 1338, 1343 (10th Cir. 1982) (ruling that the district court's refusal to allow an amendment was "particularly egregious in this case because the subject matter of the amendment was already alleged in the complaint"); *Gillette v. Tansy,* 17 F.3d 308, 313 (10th Cir. 1994) (finding no evidence of prejudice when the "[p]etitioner's amended claims track the factual situations set forth in his [original] claims"). Plaintiff has no bad faith or dilatory motive in seeking leave to file an amended class action complaint. And Plaintiff's proposed amended claim is certainly not futile.[4]

---

[4]   Also noteworthy, "practical prejudice" does not suffice to deny a motion for leave to amend. *See Patton,* 443 F.2d at 86. Instead, the inquiry is "whether the allowing of the amendment produced a grave injustice to the defendant." *Id.* Accordingly important, "the expenditure of time, money, and effort alone is not grounds for a finding of prejudice." *Bylin v. Billings*, 568 F.3d 1224, 1230-31 (10th Cir. 2009).

11

What's more, courts routinely grant plaintiffs leave to amend TCPA-specific pleadings based on facts learned through the discovery process. *See, e.g.*, *Mantha v. QuoteWizard.com, LLC*, No. CV 19-12235-LTS, 2020 WL 4369701, at *2 (D. Mass. July 30, 2020) (granting leave to amend a TCPA complaint based on newly discovered facts obtained from the defendant's discovery responses); *Becerra v. Nat'l Recovery Sols., LLC*, No. 13-CV-1547-BEN DHB, 2014 WL 3700210, at *4 (S.D. Cal. July 24, 2014) (granting leave to amend a TCPA complaint to add distinct cause of action, based on newly discovered facts obtained from the defendant's discovery responses, and noting that the plaintiff's delay was the likely result of the defendant's delayed and incomplete discovery production); *Alvarez v. MediCredit, Inc.*, No. 5-17-CV-195-DAE, 2017 WL 9362799, at *2 (W.D. Tex. Dec. 11, 2017) (granting leave to amend a TCPA complaint where the plaintiff discovered new call logs identifying additional calls from the defendant). And this case should be no different.

## Conclusion

Plaintiff respectfully requests that this Court grant her leave to file her proposed amended class action complaint, which she attaches in redline format as Exhibit 3, and in a clean format as Exhibit 4.

Dated: August 24, 2020               Respectfully submitted,

*/s/ Aaron D. Radbil*
Aaron D. Radbil
Greenwald Davidson Radbil PLLC
401 Congress Ave., Ste. 1540
Austin, Texas 78701
(512) 803-1578
aradbil@gdrlawfirm.com

Michael L. Greenwald (*pro hac vice*)
Greenwald Davidson Radbil PLLC
7601 N. Federal Highway, Suite A-230

Boca Raton, Florida 33487
(561) 826-5477
mgreenwald@gdrlawfirm.com

Gary M. Klinger
Mason Lietz & Klinger LLP
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Telephone: 202.429.2290
gklinger@masonllp.com

*Counsel for Plaintiff and the proposed classes*

## CERTIFICATE OF SERVICE

I certify that on August 24, 2020, the foregoing document was filed with the Court using

CM/ECF, which will send notification of such to counsel of record.

*/s/ Aaron D. Radbil*
Aaron D. Radbil