IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA
LINCOLN DIVISION

| | |
|---|---|
| CATHERINE PALMER, individually and on behalf of others similarly situated, | ) CASE NO. 4:19-CV-3084 <br> ) JUDGE JOHN M. GERRARD <br> ) |
| Plaintiff, <br> vs. | ) MAGISTRATE JUDGE MICHAEL D. <br> ) NELSON <br> ) |
| KCI USA, INC., | ) <br> ) |
| Defendant. | ) |

**PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION FOR LEAVE TO FILE AN AMENDED CLASS ACTION COMPLAINT**

**Introduction**

Through its opposition to Plaintiff's motion for leave to file an amended class action complaint—the first amended complaint Plaintiff seeks to file in this case—Defendant throws a kitchen sink-like group of arguments against the wall, with the hope that one of them sticks. Not one of them does.

Specifically, the claims Plaintiff asserts through her original complaint, and the claims Plaintiff asserts through her proposed amended complaint, are not just similar, but materially identical. They are not, as Defendant suggests, "entirely different." As well, no additional discovery would be required should this Court grant Plaintiff's motion for leave to amend her complaint. And Defendant's generalized contention otherwise, which lacks any real detail, does not, and cannot, change this simple fact. Moreover, contrary to Defendant's factually unsupported suggestion, Plaintiff acted diligently in seeking leave to amend her complaint. And lastly, Plaintiff is most certainly typical of the proposed classes she seeks to represent by way of her proposed amended complaint, notwithstanding that Defendant's conflicting argument is premature as Plaintiff has not yet moved to certify her proposed classes.

1

In the end, the only practical effect that Plaintiff's proposed amended complaint could have on this matter is to potentially increase Defendant's liability. And that, as numerous courts have pointed out, is not a sufficient reason to deny a motion for leave to amend a complaint.

**Argument**

I. **The claims Plaintiff asserts through her original complaint, and the claims Plaintiff asserts through her proposed amended complaint, are not just similar, but materially identical.**

Defendant states that "Plaintiff is seeking to bring an entirely new case," and that "the theory of Plaintiff's case has fundamentally changed." ECF No. 45 at 6. But this is far from true. Even a cursory review of the claims Plaintiff asserts through her original complaint, and the claims Plaintiff seeks to assert through her amended complaint, confirms they are materially identical. To be sure, through the single count Plaintiff includes in her original complaint she asserts:

> 69 . . . Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by utilizing an automatic telephone dialing system to place calls to Plaintiff's cellular telephone number, without her consent.
>
> 70. Defendant separately violated 47 U.S.C. § 227(b)(1)(A)(iii) by utilizing an artificial or prerecorded voice in connection with calls it placed to Plaintiff's cellular telephone number, without her consent.

ECF No. 1 at 13.[1]

---

[1] While KCI insinuates that it only makes robocalls "regarding . . . life-saving medical devices," ECF No. 44 at 1, its suggestion is misleading. Indeed, KCI testified that the majority of the ATDS calls and prerecorded voice messages at issue were placed and delivered "primarily around billing of the orders." *See* Excerpt of Transcript of Michelle Hahn, attached as Exhibit A, at 14:19-24. And the specific calls and messages Defendant placed and delivered to Plaintiff's cellular telephone number were no different. *See, e.g.*, Excerpt of Transcript of Catherine Palmer, attached Exhibit B, at 40: 6-10 ("I would have copies of the e-mails I made to KCI to tell them again that they were calling my number instead of this other woman's, and that I had never owed them money, had never used any of their products."); *id.* at 93:25-94:6 ("I felt harassed. I'm a very honest person, I pay my bills. When I call somebody and tell them something, I expect to be believed. I was not believed. *They were wanting equipment I didn't have. They were wanting money I did not owe them.* I would ask them to take my number off, they wouldn't do it. It went on for months.") (emphasis added). As such, Defendant's characterization of the calls in question

And through the single count Plaintiff includes in her proposed amended complaint she asserts:

> 78. Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by utilizing an ATDS to place calls to Plaintiff's cellular telephone number without consent.
>
> 79. Defendant separately violated 47 U.S.C. § 227(b)(1)(A)(iii) by utilizing an artificial or prerecorded voice in connection with calls it placed to Plaintiff's cellular telephone number without consent.

ECF No. 44-4 at 11.[2]

Simply put, through her original complaint, Plaintiff alleges that Defendant violated the TCPA by placing automatic telephone dialing system ("ATDS") calls, and delivering artificial or prerecorded voice messages, absent prior express consent. *See* ECF No. 1 at 13. And through her proposed amended complaint, Plaintiff alleges that Defendant violated the TCPA by placing ATDS calls, and delivering artificial or prerecorded voice messages, absent prior express consent.

---

as "regarding . . . life-saving medical devices," without more, does not paint the full picture—that KCI placed the calls and delivered the messages at bar "primarily" for "billing" purposes. Of note, the Federal Communications Commission made clear that calls made for "billing" purposes should be treated differently than calls made for "healthcare" purposes. *See, e.g.*, *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, ¶ 146 (2015) ("While this second group of calls regarding billing and accounts may convey information, we cannot find that they warrant the same treatment as calls for healthcare treatment purposes. . . . We therefore grant the exemption for calls subject to HIPAA, but limit this exemption by excluding any calls contained therein that include telemarketing, solicitation, or advertising content, or which include accounting, billing, debt-collection, or other financial content.").

2     Defendant states that "[t]hrough a transposition of one single digit, KCI accidentally called" Plaintiff's cellular telephone number. ECF No. 45 at 1. But Defendant's suggestions omits that it continued to placed ATDS calls, and deliver prerecorded voice messages, to Plaintiff's cellular telephone even after she repeatedly informed Defendant that it was calling the wrong number, and that it should stop doing so. *See, e.g.*, Exhibit B, at 37:2-4 ("They just kept calling until I finally—I e-mailed them when I got online and found the company."); *id*. at 40:20-41:8 (discussing the number of times Plaintiff called Defendant in an effort to stop the calls and messages in question); *id*. at 76:5-11 ("I asked them to take my number off. Like I said, the one lady told me they couldn't, and then finally after finding the Web site, I e-mailed them and told them I thought maybe if they had a written record, that that would work. . . . I felt harassed.").

*See* ECF No. 44-4 at 11. In other words, the theory of liability that Plaintiff includes in both her original complaint and her proposed amended complaint is identical: Plaintiff asserts that Defendant systematically violated the TCPA on a massive scale by placing ATDS calls, and delivering prerecorded voice messages, to tens of thousands, if not hundreds of thousands, of cellular telephone numbers, absent required consent. Considering this, Defendant's suggestions that "Plaintiff proposes . . . a new case entirely focused on an entirely different legal theory," *id*. at 11, and that "the actual theory of liability and putative class completely entirely different [sic]," *id*., are quite removed from reality.

> II. **No additional discovery would be required should this Court grant Plaintiff's motion for leave to amend her complaint.**

Defendant argues that "[w]ith Plaintiffs' eleventh-hour request . . . all discovery in this case would need to start over, as would every date in this Court's schedule." ECF No. 45 at 2. Defendant similarly contends that "Plaintiff's amendment would cause a wholesale restart of this case." *Id*. And likewise, Defendant suggests that "the amendment would absolutely require additional and expansive discovery." *Id*. at 3.

But Defendant never explains with any detail what "additional and expansive discovery" would be required should this Court grant Plaintiff leave to amend her complaint. Defendant's omission is not, however, surprising given that no additional discovery would be required should this Court grant Plaintiff's pending request.

To be certain, through both her original complaint, and her proposed amended complaint, Plaintiff alleges that Defendant violated the TCPA by placing ATDS calls, and delivering artificial or prerecorded voice messages, absent prior express consent. *See supra* Argument § I. As such, to prevail on the claims she asserts through her original complaint—both on her own behalf, and on behalf of the class members she seeks to represent—Plaintiff must make the same showing she

4

would have to make to prevail on the claims she asserts through her proposed amended complaint. More particularly, Plaintiff must show—to succeed under both her original complaint and her proposed amended complaint—"that defendant (1) called her cellular telephone, (2) 'using an automatic telephone dialing system' ('ATDS') or 'an artificial or prerecorded voice,' (3) without her 'prior express consent.'" *Thompson-Harbach v. USAA Fed. Sav. Bank*, 359 F. Supp. 3d 606, 615 (N.D. Iowa 2019).

Significant, then, is that Defendant concedes it used its Cisco Unified Contact Center Enterprise dialing system ("Cisco dialing system") to place seven calls to Plaintiff's cellular telephone number, and to deliver five prerecorded voice messages to Plaintiff's cellular telephone number. *See* Defendant's Answers and Responses to Plaintiff's Written Discovery Requests, attached as Exhibit C, at Interrogatory Nos. 4 and 5. Also important, Defendant admits that "Plaintiff did not give Defendant prior express consent to place, or cause to be placed, calls to [her cellular] telephone number." *See id*. at Request for Admission No. 7; *see also* ECF No. 44-2 at 5, 89:12-90:1 ("Q. Did Ms. Palmer ever provide KCI express consent to place calls to her cellular telephone number by using an automatic telephone dialing system or predictive dialer or prerecorded voice? . . . A. Not that I'm aware of. Q. Do you have any reason to believe that Ms. Palmer gave KCI consent to place calls to her cellular telephone in any manner. . . . A. No."). Consequently, no additional discovery is required to prove Plaintiff's individual claims, as she asserts them through her proposed amended complaint.

Regarding the claims of the members of the first class Plaintiff includes in her proposed amended complaint—the "Dialer and Prerecorded Voice Class"[3]—Defendant concedes that it

---

[3] Plaintiff defines the "Dialer and Prerecorded Voice Class" as: "All persons and entities throughout the United States (1) to whom KCI USA, Inc. placed, or caused to be placed, a call directed to a number assigned to a cellular telephone service, (3) by using the Cisco Unified

placed "approximately 1.76 million calls to 372,290 telephone numbers using the Cisco dialing system." *See* Defendant's Amended Answers and Responses to Plaintiff's Written Discovery Requests, attached as Exhibit D, at Interrogatory No. 10. Defendant also acknowledges that it used its Cisco dialing system to deliver 732,462 prerecorded voice messages to the same 372,290 telephone numbers. *See* Defendant's Second Amended Answers and Responses to Plaintiff's Written Discovery Requests, attached as Exhibit E, at Interrogatory No. 5. And for the 372,290 numbers in question, Plaintiff's expert makes clear through her report that she is able to determine which of them is a cellular telephone number as opposed to a landline. Moreover, Defendant admits that it did not obtain prior express consent from the persons to whose telephone numbers it placed the 1.76 million calls, and delivered the 732,462 prerecorded voice messages, by way of its Cisco dialing system: "*As we discussed earlier, we don't have direct consent from the patient.*" ECF No. 44-2 at 7, 117:15-16 (emphasis added); *see also id*. at 5-6, 87:21-90:1 (explaining that as a matter of pattern and practice "for all—all of KCI's customers" Defendant does not obtain prior express consent to place calls to telephone numbers directly from the intended recipient of its calls); *accord* 3-4, 33:15-35:7 (explaining that persons to whom Defendant places calls generally do not directly provide personal contact information, including their telephone number, to Defendant).[4] Thus, no additional discovery is required to prove the claims of the "Dialer and Prerecorded Voice Class," as Plaintiff asserts them through her proposed amended complaint.

---

Contact Center Enterprise dialing system, or an artificial or prerecorded voice, (4) from August 19, 2015 through the date of class certification." ECF No. 44-4 at 8, ¶ 48.

[4]   Defendant's characterizations of these admissions as "legal opinions" and "legal conclusions" is incorrect. And Defendant's related argument that Ms. Hahn's testimony cannot bind Defendant is equally misplaced. Indeed, Ms. Hahn was entitled to, obligated to, and did testify regarding the facts underlying Defendant's potential prior express consent defense. And while Ms. Hahn may lack the power to fully dispose of the issue as a matter of law—as whether Defendant is ultimately able to satisfy the affirmative defense of prior express consent "is a question to be

And as for the claims of the second class Plaintiff includes in her proposed amended complaint—the "Wrong Number Class"[5]—Defendant produced call notes from KCI's system of record that include wrong number indicators—such as "wrong number," "wrong #," "wrong phone," and "incorrect number," among others—associated with specific telephone numbers to which Defendant placed calls, and delivered prerecorded voice messages, by using its Cisco dialing system. *See* Exhibit D, at Request for Production No. 13. More specifically, Defendant's

---

decided by the Court," *Hamilton v. Spurling*, No. 3:11CV00102, 2013 WL 1165034, at *2 (S.D. Ohio Mar. 20, 2013)—fact-based evidence obtained through "Rule 30(b)(6) testimony is 'binding' on the organization," even if that fact-based evidence pertains to an ultimate legal conclusion. *See W. Virginia Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, No. CV 13-1686 (JRT/FLN), 2017 WL 9325026, at *7 n.6 (D. Minn. Oct. 12, 2017); *see also, e.g.*, *Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 503 (S.D.N.Y. 2014) (using corporate representative fact-based testimony concerning company training and procedures to interpret issues of prior express consent).

Of additional note, Defendant's citation to *Polaris Indus. Inc. v. CFMOTO Powersports, Inc.* highlights the wide gulf between legal opinions and conclusions, and the facts about which Ms. Hahn testified regarding the issue of prior express consent. No. 10-CV-4362 (JNE/HB), 2015 WL 13637322 (D. Minn. Apr. 27, 2015). In *Polaris*, the court granted a party's motion for a protective order concerning a Rule 30(b)(6) deposition topic that sought the corporate representative's testimony about whether various media "constitutes 'prior art'" in an intellectual property dispute, because "it would essentially have amounted to a spoon-feeding and then disgorgement of attorney and/or expert analysis, which is not within the scope of a corporate representative's knowledge." *Id.* at *3. Here, rather than requesting Ms. Hahn's legal analysis, Plaintiff asked simple fact-based questions regarding Defendant's procedures for obtaining consent, starting with "is that the case for all of . . . KCI's customers, that the express consent would really go through a caregiver?" ECF No. 44-2 at 5, 89:2-4. This was followed by "does KCI . . . do anything to independently verify that third parties, such as caregivers who provided a customer's telephone number to KCI, actually obtain consent from the customer to dial the telephone number by way of an automatic telephone dialing system or a prerecorded voice?" *Id.* at 9, 128:16-23. These factual questions, among related questions, targeted the factual basis for Defendant's purported belief that it had consent to place the ATDS calls and deliver the prerecorded voice messages in question, and Ms. Hahn's factual answers addressed those factual inquiries. At no point did Plaintiff seek a legal opinion or conclusion from Ms. Hahn.

[5]   Plaintiff defines the "Wrong Number Class" as: "All persons and entities throughout the United States (1) to whom KCI USA, Inc. placed, or caused to be placed, a call directed to a number assigned to a cellular telephone service, but not assigned to a KCI USA, Inc. customer, (3) by using the Cisco Unified Contact Center Enterprise dialing system, or an artificial or prerecorded voice, (4) from August 19, 2015 through the date of class certification." ECF No. 44-4 at 8, ¶ 48.

production shows that for the 372,290 telephone numbers to which Defendant placed calls, and delivered prerecorded voice messages, by using its Cisco dialing system, Defendant used the indicator "wrong number" to identify specific telephone numbers in over 10,000 notes associated with them, the indicator "wrong #" to identify specific telephone numbers in over 8,500 notes associated with them, the indicator "wrong phone" to identify specific telephone numbers in over 2,000 notes associated with them, and the indicator "incorrect number" to identify specific telephone numbers in just under 1,000 notes associated with them. Important, then, is that Defendant did not have, and could not have had, consent to place calls, and deliver prerecorded voice messages, to wrong telephone numbers. *See N. L. by Lemos v. Credit One Bank, N.A.*, 960 F.3d 1164, 1167 (9th Cir. 2020) ("intent to call a customer who had consented to its calls does not exempt [the caller] from liability under the TCPA when it calls someone else who did not consent"); *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014) (explaining that only the current subscriber to a cellular telephone number can provide valid consent to receive calls made by an ATDS); *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 641 (stating that "[c]onsent to call a given number must come from its current subscriber"); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 2015 WL 4387780 (F.C.C. July 10, 2015) (clarifying that the "called party" who must provide prior express consent "is the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan"). As a result, no additional discovery is required to prove the claims of the "Wrong Number" class, as Plaintiff asserts them through her proposed amended complaint.

Lastly, Defendant's suggestion that should this Court grant Plaintiff's motion for leave to amend her complaint "KCI would absolutely obtain evidence from healthcare providers and patients to obtain confirmatory evidence that they, unsurprisingly, consent to receive calls," ECF No. 54 at 3, is disingenuous. In short, on October 28, 2019—less than three weeks after she filed her class action complaint—Plaintiff served Defendant with a request for production specifically targeted to obtain information and documents regarding prior express consent Defendant purportedly believes it had to place ATDS calls, or deliver prerecorded voice messages, to the "Dialer and Prerecorded Voice Class": "For the telephone numbers [at issue] *documents and electronically stored information evidencing express consent* Defendant had to make, or cause to be made, communications, or attempted communications, to the telephone numbers, by using an automatic telephone dialing system, a predictive dialer, or an artificial or prerecorded voice." ECF No. 44-1 at 3 (emphasis added). Defendant, however, decided not to provide any information or documents in response to Plaintiff's request. *See* ECF No. 44 at 4. In other words, for the near entirety of this matter, Defendant had a particular, formal discovery obligation to produce what it now suggests it "would absolutely obtain" should this Court grant Plaintiff's motion for leave to amend her complaint, but chose to shirk its discovery obligation. Defendant's contention, therefore, that it would—in the event this Court grants Plaintiff's motion for leave to amend her complaint—obtain information and documents that it had a formal discovery obligation to obtain for just shy of a year now—but decided not to obtain to date—rings quite hollow. And this is particularly true given that when Plaintiff asked Defendant about "documents and electronically stored information evidencing express consent Defendant had" to place ATDS calls, and deliver prerecorded messages, to the subject 372,290 telephone numbers—which Defendant suggested it

9

attached to its answers and responses to Plaintiff's initial written discovery requests—KCI claimed that it was unaware of any such "attached" document. *See* ECF No. 44 at 4.

At bottom, should this Court grant Plaintiff's motion for leave to amend her complaint, no additional discovery would be required. And tellingly, Plaintiff—who bears the burden of proving her claims—does not ask this Court for any additional time to conduct discovery based on her motion to amend her complaint.

### III. Plaintiff acted diligently in seeking leave to amend her complaint.

KCI argues that Plaintiff did not act diligently in seeking leave to amend her complaint. *See* ECF No. 45 at 9-10. Defendant's contention, however, lacks support. *See generally* ECF No. 44 at 7-9.

To be clear, on July 29, 2020, Defendant made Plaintiff aware, for the first time, that "*[a]s we discussed earlier, we don't have direct consent from the patient.*" ECF No. 44-2 at 7, 117:15-16 (emphasis added). Defendant also made Plaintiff aware for the first time on July 29, 2020 that as a matter of pattern and practice "*for all—all of KCI's customers*" Defendant does not obtain prior express consent to place calls to telephone numbers directly from the intended recipient of its calls, *see id*. at 5-6, 87:21-90:1 (emphasis added), and that persons to whom Defendant places calls generally do not directly provide personal contact information, including their telephone number, to Defendant. *See id*. at 3-4, 33:15-35:7.

Additionally, and for the first time on July 29, 2020, Defendant made Plaintiff aware that it simply "assume[s]" it has consent to place ATDS calls, and deliver prerecorded voice messages, by using its Cisco dialing system. ECF No. 44-2 at 5, 88:13-19. Along the same line, for the first time on July 29, 2020 Defendant made Plaintiff aware that it merely "implie[s]" it has consent to

10

place ATDS calls, and deliver prerecorded voice messages, as opposed to obtaining express consent to do so. *See id*. at 10, 131:5-12.

And Defendant's argument that its answer to Plaintiff's interrogatory no. 18—which reads: "Describe Defendant's efforts to verify or confirm that telephone number (402) [XXX]-[XXXX] was assigned to the intended recipient of Defendant's calls[,]" ECF No. 45-1 at 3, Interrogatory No. 18—somehow made Plaintiff aware that, for example, "*[a]s we discussed earlier, we don't have direct consent from the patient*," ECF No. 44-2 at 7, 117:15-16, is baseless. Stated otherwise, Defendant's contention that its statement that "KCI's customer ordered a prescription medical device from KCI through the customer's healthcare provider, voluntarily providing the telephone number for communications regarding the prescription medical device," ECF No. 45-1 at 3, Interrogatory No. 18, is simply not sufficient to make Plaintiff aware that KCI does not, as a matter of pattern and practice "*for all—all of KCI's customers*," obtain direct consent to place ATDS calls and deliver prerecorded voice messages.

What's more, as it turns out, Defendant's answer to Plaintiff's interrogatory no. 18 is short on factual support. In sum, Defendant admitted on July 29, 2020 that "KCI never obtained express consent to place calls to the telephone number at issue directly from [its customer]." ECF No. 44-2 at 5, 88:13-89:1. As well, Defendant conceded on July 29, 2020 (i) that it does not "do anything to independently verify that third parties, such as caregivers who provided a customer's telephone number to [Defendant], actually obtain consent from the customer to dial the telephone number by way of an automatic telephone dialing system or a prerecorded voice," ECF No. 44-2 at 9, 128:16-129:3; (ii) that it did not "throughout the relevant time period, ever independently review the manner in which third parties, such as a caregiver who provided a customer's telephone number to [Defendant], obtain consent from the customer to dial the telephone number by using an

11

automatic telephone dialing system or a prerecorded voice," *id*. at 129:4-20; and (iii) that it did not "throughout the relevant time period, ever independently review language that third parties, such as a caregiver who provided customers telephone number to KCI, use to obtain consent from the customer to dial that number, for example, by an automatic telephone dialer or prerecorded voice." *Id*. at 9-10, 129:21-130:7.

Considering, therefore, that Plaintiff moved for leave to amend her complaint almost immediately after learning that Defendant does not obtain prior express consent to place most of its calls, and deliver most of its prerecorded voice messages, Plaintiff acted diligently in seeking leave to amend her complaint, and Defendant's suggestion otherwise lacks support.[6]

---

[6] It should come as no surprise to Defendant that Plaintiff now seeks to amend her complaint to include the "Dialer and Prerecorded Voice Class." Although KCI states that "over the past year of discovery, Plaintiff showed no interest in pursuing anything other than her 'wrong number' class," (ECF No. 45 at 2), Defendant's contention lacks support. That is, on October 28, 2019—less than three weeks after she filed her class action complaint—Plaintiff served written discovery requests that ultimately resulted in answers and responses from Defendant that identify the size and scope of the "Dialer and Prerecorded Voice Class." ECF No. 44-1 at 3. And KCI did not seek protection from this Court because it believed this discovery was improper. Rather, KCI responded to Plaintiff's discovery requests—although belatedly—by providing information and documents establishing that it placed approximately 1.76 million calls, and delivered 732,462 prerecorded voice messages, to 372,290 telephone numbers by way of its Cisco dialing system. Also significant, Defendant was on actual notice that Plaintiff agreed to its requested discovery-related extensions only to the extent that Defendant would not oppose any relatedly necessary modification to the court's scheduling order:

> [Counsel for Plaintiff]: We are amenable to the mutual 2 week additional extension, however, we need you to confirm (as per our prior agreement) that we will be getting full and complete responses to the class-wide discovery requests. This was the condition on which we previously agreed to the 60 day extension but I want to reaffirm our position on the record. *In addition, our agreement to the additional extension is also conditioned on the understanding that KCI will not oppose a modification of the scheduling order to reflect the additional time allowed, should such a modification be needed*.
>
> [Counsel for Defendant]: Confirmed. Thanks.

January 26, 2020 Email String, attached as Exhibit F (emphasis added).

12

## IV. Plaintiff is typical of the "Dialer and Prerecorded Voice Class."

Defendant suggests that Plaintiff's proposed amendment is futile because she cannot represent the "Dialer and Prerecorded Voice Class," as she is not typical of the members of the "Dialer and Prerecorded Voice Class." This makes little sense.

"Rule 23(a) requires the class representatives, the named plaintiffs in this case, have claims or defenses which 'are typical of the claims or defenses of the class.'" *Evans v. Am. Credit Sys., Inc.*, 222 F.R.D. 388, 394 (D. Neb. 2004) (citing Fed.R.Civ.P. 23(a)(3)). "Typicality means there are 'other members of the class who have the same or similar grievances as the plaintiff.'" *Id.* (citing *Donaldson v. Pillsbury Co.,* 554 F.2d 825, 830 (8th Cir.1977)). "Typicality is satisfied where the named plaintiffs' claims 'arise from the same event or pattern or practice and are based on the same legal theory' as the claims of the class." *Id.* (citing *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir.1984)). "The burden to establish typicality is 'fairly easily met so long as other class members have claims similar to the named plaintiff.'" *Id.* (citing *DeBoer*, 64 F.3d at 1174. And "[f]actual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Id.* (citing *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996).

Here, Plaintiff is surely a member of the "Dialer and Prerecorded Voice Class." She is a person, to whom Defendant placed a call directed to a number assigned to a cellular telephone service, by using the Cisco dialing system and a prerecorded voice, from August 19, 2015 through

---

Also worth mentioning, on September 15, 2020, Defendant reached out to Plaintiff to request an agreement to alter a deadline—Defendant's deadline to disclose its expert report—included in this Court's Second Amended Case Progression order. Plaintiff did not oppose Defendant's request.

13

the date of class certification. *See* ECF No. 44-4 at 8, ¶ 48. And Plaintiff's claims are the same as the claims of the members of the "Dialer and Prerecorded Voice Class." *See supra* Argument § I. That is, both Plaintiff and the members of the "Dialer and Prerecorded Voice Class" must prove that Defendant "(1) called [their] cellular telephone, (2) 'using an automatic telephone dialing system' ('ATDS') or 'an artificial or prerecorded voice,' (3) without [their] 'prior express consent.'" *Thompson-Harbach*, 359 F. Supp. 3d at 615. Plaintiff is therefore typical of the "Dialer and Prerecorded Voice Class."

And Defendant's references to cases in which courts found that individuals who did not send a "stop text" are not members of a "stop texting" class, *see* ECF No. 45 at 14, and that individuals "who are potentially bound by Comcast's arbitration provision" could not represent a particular class, are plainly inapposite.

Given, therefore, that an amended complaint is futile only where it "could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure," Plaintiff's proposed amended complaint is not futile. *Sevela v. Kozeny & McCubbin, L.C.*, No. 8:18CV390, 2019 WL 3067996, at *1 (D. Neb. July 12, 2019). And this is especially true given that striking class allegations—at what would be the equivalent of the motion to dismiss stage—is premature and improper in all but exceptional circumstances. *See, e.g.*, *Rios v. State Farm Fire & Cas. Co.*, 469 F. Supp. 2d 727, 742 (S.D. Iowa 2007) (noting that the defendant's motion to dismiss and strike class allegations was "premature"); *Weiss v. Grand Campus Living, Inc.*, No. 118CV00434JRSTAB, 2019 WL 1261405, at *2 (S.D. Ind. Mar. 19, 2019) (explaining that it is appropriate to "deny motions to strike as premature when made before the named plaintiffs have moved for certification."); *Brown v. Swagway, LLC*, No. 3:15-CV-588 JVB, 2017 WL 899949, at *2 (N.D. Ind. Mar. 7, 2017) ("Plaintiff might have an uphill climb on a motion to certify the class,

14

but striking at this point would be premature. Defendant may re-raise its arguments later."); *Fitzhenry v. Career Educ. Corp.*, No. 14-CV-10172, 2016 WL 792312, at *5 (N.D. Ill. Mar. 1, 2016) (denying motion to strike TCPA class claims because all arguments advanced are "speculative" and "premature"); *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 299 (N.D. Ill. 2014) ("the Court rejects Optimum's predominance and commonality arguments as premature. The Court makes no determinations regarding whether proposed class members' claims are, in fact, susceptible to generalized proof; it holds only that Buonomo must have the opportunity to conduct discovery regarding what evidence that exists before the Court can determine whether certification of a 'wrong party' class is appropriate in this case.").

## Conclusion

The practical effect of Plaintiff's proposed amended complaint, should this Court grant Plaintiff leave to file it, boils down to little more than an increase in Defendant's potential liability. That is, the claims Plaintiff asserts through her original complaint, and the claims she asserts through her proposed amended complaint, are materially identical. *See supra* Argument § I. And no additional discovery would be required should this Court grant Plaintiff's motion for leave to amend her complaint. *See supra* Argument § II. The only real-world change Plaintiff's proposed amended complaint could have on this matter is that Defendant could face liability for systematically violating the federal rights of hundreds of thousands of individuals, as opposed to the tens of thousands of individuals who likely fall within the class definition Plaintiff includes in her original complaint.

This, however, does not serve as a basis to deny Plaintiff's request to amend her complaint. *See Sullivan v. Cty. of Suffolk*, No. CV 04-3651 JS/ETB, 2006 WL 2844205, at *11 (E.D.N.Y. June 1, 2006) ("[p]urely monetary increase of exemplary, or punitive damages, is not in itself

considered prejudicial to the nonmoving party"); *Pesce v. Gen. Motors Corp.*, 939 F. Supp. 160, 166 (N.D.N.Y. 1996) ("Prejudice, of course, is not found in the mere exposure of the defendant to greater liability."); *Serfecz v. Jewel Food Stores, Inc.*, No. 92 C 4171, 1997 WL 543116, at *6 (N.D. Ill. Sept. 2, 1997) ("increased exposure to potential liability . . . is hardly the type of prejudice which can be considered 'undue'"); *Reyna v. Flashtax, Inc.*, 162 F.R.D. 530, 532 (S.D.Tex.1995) (commenting that a plaintiff should not be denied an opportunity to amend the complaint "merely because it might entitle him to greater damages"); *Goldberg v. Sue–Glo Realty Corp.*, No. 96 Civ. 6606, 1987 WL 28848, at *1 (S.D.N.Y. Dec.16, 1987) (noting that a party's "potentially increased liability" is insufficient grounds upon which to deny a motion for leave to amend); *National Fuel Gas Distribution Corp. v. Ashland Oil, Inc.*, No. Civ.–80–810E, 1987 WL 9394, at *2 (W.D.N.Y. Apr.13, 1987) ("Prejudice is not merely an increased risk of potential liability."); *Gibson v. American Broad. Cos.*, No. 82 Civ. 5249, 1986 WL 10290, at *2 (S.D.N.Y. Sept. 10, 1986) (stating that an increase in a party's exposure to liability "is not the type of prejudice which warrants denial of leave to amend"); *Yorden v. Flaste*, 374 F.Supp. 516, 521 (D. Del. 1974) (stating that a defendant is not prejudiced even though change of plaintiff would increase measure of damages).

Dated: September 15, 2020     Respectfully submitted,

         */s/ Aaron D. Radbil*
         Aaron D. Radbil (*pro hac vice*)
         Greenwald Davidson Radbil PLLC
         401 Congress Ave., Ste. 1540
         Austin, Texas 78701
         (512) 803-1578
         aradbil@gdrlawfirm.com

         Gary M. Klinger (*pro hac vice*)
         Mason Lietz & Klinger LLP

227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Telephone: 202.429.2290
gklinger@masonllp.com

*Counsel for Plaintiff and the proposed classes*

## CERTIFICATE OF SERVICE

I certify that on September 15, 2020, the foregoing document was filed with the Court using CM/ECF, which will send notification of such to counsel of record.

*/s/ Aaron D. Radbil*
Aaron D. Radbil