# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEBRASKA**
**LINCOLN DIVISION**

| | |
|---|---|
| CATHERINE PALMER, individually and on behalf of others similarly situated, | ) CASE NO. 4:19-CV-3084 |
| | ) JUDGE JOHN M. GERRARD |
| | ) |
| Plaintiff, | ) MAGISTRATE JUDGE MICHAEL D. |
| vs. | ) NELSON |
| | ) |
| KCI USA, INC., | ) |
| | ) |
| Defendant. | ) |

**REBUTTAL REPORT OF JEFFREY A. HANSEN**

1.     My name is Jeffrey A. Hansen. I am an adult over the age of 18, a resident of the state of California, and I reside at 2625 Kings View Circle, Spring Valley, CA 91977. Unless indicated otherwise, I have personal knowledge of each of the matters stated herein, and if called to testify I could and would testify competently about them.

2.     I was asked to prepare a rebuttal report in response to the report that Jan Kostyun summitted in this matter.

3.     I have been retained in this case at a rate of $300 per hour, for all services rendered, and $380 per hour for depositions

**Experience and Credentials**

4.     I am the principal of Hansen Legal Technologies, Inc. My firm is in the business of handling Information Technology, including investigations and analysis of electronic data. I have served as an expert or consultant in more than 150 Telephone Consumer Protection Act ("TCPA") class action lawsuits, and as an expert or consultant in hundreds of other civil cases.

5.    With regard to my experience as an expert and consultant in legal matters, generally, I have frequently served as an expert witness and consultant to law firms in conducting computer forensic analysis. I have also assisted in electronic discovery issues.

6.    I have extensive experience with data warehousing, including data warehousing related to telemarketing and autodialers in general. I am familiar with the procedures involved in such practices, and I have personally engaged in data warehousing regarding the compilation of certain lists, including demographic and target audience lists for telemarketing, and have personally repaired defective lists to eliminate improperly formatted and corrupted data.

7.    I also frequently act as a consultant to companies that engage in the use of autodialers, and I am familiar with their use and procedures, and the technical aspects of that business. In that capacity, I have assembled, configured, maintained, operated all aspects of autodialers, and interfaced with the telecommunications providers through whose networks the autodialers operate.

8.    I have set up and maintained all aspects of predictive dialers and autodialers, from predictive dialers operating with just three telephone lines to outbound call centers, run from three locations, capable of generating over 1 million calls per hour. When building these systems, I have used various software and hardware solutions for predictive and autodialers, both proprietary and open source, and customized those systems for their particular uses. I myself have used and maintained predictive and autodialers, and trained others to do the same.

9.    Further, I am familiar with manners in which outbound dial lists are used and maintained. Similarly, I am familiar and have experience with, and know how to use, databases containing cell block identifiers and ported number lists, both of which identify cellular type telephone numbers and are typically used in these industries.

2

10.     Maintaining and analyzing calling lists and data has been a common task for me since 2000.

11.     Over the last thirty-one years, I have also had extensive experience in a broad range of other areas in the electronic and information technology fields and obtained many certifications such as MCP 4.0, A+, Network+, MCP 2000, MCSA, MCSE, Linux+, I-Net+, Security+, CIW Security Analyst.  From the hardware perspective, I have extensive experience in troubleshooting and repairing at the component level, and building various systems for various purposes. I have designed, built and maintained computer networks in a variety of environments from commercial businesses to very large DoD networks. I have taught approximately 1,000 others the skills to become computer network engineers themselves.

12.     I have had extensive experience in dealing with security breaches and hardening computer networks against those breaches.  I have handled many computer forensic and E-Discovery matters, including internal investigations in companies, working at the FBI sponsored Regional Computer Forensics Laboratory, and founding a computer forensics and E-Discovery firm over 9 years ago.  I have also had extensive experience with the set-up and use of predictive and autodialers. *See Exhibit A – Resume of Jeffrey A. Hansen*.

13.     I have been called to testify in the following civil matters: *Craig Casey v. Valley Center Insurance Agency Inc*., Case No. 37-2008-00004378-SC-SC-CTL (San Diego Superior Court); *Stemple v. QC Holdings, Inc*., Case No. 12-CV-1997-CAB-WVG (S.D. Cal.); *Hahn v. Massage Envy Franchisin*g, Case No: 3:12-cv-00153-DMS-BGS (S.D. Cal.); *Abdeljalil v. General Electric Capital Corporatio*n, Case No: 12-cv-02078-JAH-MDD (S.D. Cal.); *Jasminda Webb v. Healthcare Revenue Recovery Group, LLC* Case No: C 13-0737 JD (N.D. Cal.); *Balschmiter v. TD Auto Finance, LLC*, Case No: 2:13-cv-01186 (E.D. Wisc.)*; Jordan Marks v. Crunch San Diego,*

*LLC*, Case No. 14-CV-0348-BAS (BLM) (S.D. Cal.); *Peter Olney v. Job.com,* Case No: 1:12-cv-01724-LJO-SKO (E.D. Cal.); *Carlos Guarisma v. ADCAHB Medical Coverages, Inc. and Blue Cross and Blue Shield of Florida, Inc*., Case No: 1:13-cv-21016-JLK (S.D. Fla.); *Farid Mashiri v. Ocwen Loan Servicing, LLC*, Case No: 3:12-cv-02838 (S.D. Cal.); *Monty J. Booth, Attorney at Law, P.S. v. Appstack, Inc*., Case No. 2:13-cv-01533-JLR (W.D. Wash.); *Rinky Dink, Inc. d/b/a Pet Stop v. World Business Lenders, LLC*, Case No. 2:14-cv-00268-JCC (W.D. Wash.); *Michael Reid and Dave Vacarro v. I.C. Systems, In*c., Case No. 2:12-cv-02661-ROS (D. Ariz.); *Jeffrey Molar v. NCO Financial System*s Case No. 3:13-cv-00131-BAS-JLB (S.D. Cal.); *Latonya Simms v. Simply Fashion Stores Ltd., and ExactTarget, Inc*., Case No. 1:14-CV-00737-WTL-DKL (D. Ind.); *Sueann Swaney v. Regions Bank*, Case No. CV-13-RRA-0544-S (N.D. Ala.); *Hooker v. SiriusXM*, Case No. 4:13-cv-00003 (AWA) (E.D. Va.); *Diana Mey v. Frontier Communications*, Case No. 13-cv-01191-RNC (D. Conn.); *Rachel Johnson v. Yahoo!* and *Zenaida Calderin v. Yahoo! Cas*e No. 14-cv-2028 14-cv-2753 (N.D. IL); *Philip Charvat v. Elizabeth Valente*, Case No. 12-cv-5746 (N.D. IL); *Robert Zani v. Rite Aid Hdqtrs. Cor*p., Case No. 14-cv-9701(AJN)(RLE)(S.D. NY), *A.D. v. Credit One Ban*k Case No. 1:14-cv-10106 (N.D. IL); *Oerge Stoba, and Daphne Stoba v. Saveology.com, LLC, Elephant Group, Inc.; Time Warner Cable, Inc*., Case No. 13-cv-2925-BAS-NLS (S.D. Cal.); *Shyriaa Henderson v. United Student Aid Funds, Inc*. Case Number: 3:13-cv-1845-L-BLM (S.D. Cal.); *Marciano v. Fairwinds Financial Service*s Case No. 6:15-CV-1907-ORL-41 KRS (M.D. Fla); *Alice Lee v. Global Tel*Link Corporatio*n, Case No. 2:15-cv-02495-ODW-PLA [consolidated with 2:15-cv-03464-ODW-PLA (C.D. Cal.); *Alan Brinker v. Normandin'*s, Case No. 5:14-cv-03007-EJD-HRL (N.D. Cal.*); Spencer Ung v. Universal Acceptance Corporation,* Case No. 15cv127 RHK/FLN (D. Minn*); Seana Goodson v. Designed Receivable Solutions,* Case No. 2:15-cv-03308-MMM-JPR (C.D. Cal); *Dominguez v. Yahoo!, In*c.,

Case No. 2:13-cv-01887 (E.D. Penn); *Eli Ashkenazi v. Bloomingdales, Inc*., Case No. 3:15-cv-02705-PGS-DEA (D. N.J.); *Abante Rooter and Plumbing, Inc. v. Birch Communications, Inc*. Case No. 1:15-cv-03562 (N.D. GA); *Roark v. Credit One Bank*, Case No. 0:16-cv-00173-RHK-FLN (D.Minn); *Carl Lowe And Kearby Kaiser v. CVS Pharmacy, Inc., Minuteclinic, LLC, and West Corporation*, Case No. 1:14-cv-03687 (N.D. Ill); *Zaklit v. Nationstar Mortgage, LLC*., Case No. 5:15-CV-02190-CAS-KK (C.D. Cal); *Charles Banks v. Conn Appliance, Inc*., Case No. 01-16-0001-0736 (American Arbitration Association); *Rajesh Verma v. Memorial Healthcare Group*, Case No. 3:16-CV-00427-HLA-JRK (M.D. Fla); *Herrick v. Godaddy.com*, Case No. 2:16-cv-00254-DJH (D.AZ); *In Re: Monitronics International, Inc., Telephone Consumer Protection Act Litigation*, Case No. 1:13-md-02493-IMK-JSK (N.D.W.V.); *Diana Mey v. Ventura Data*, LLC And Public Opinion Strategies, Case No. 5:14-CV-123 (N.D.W.V.); *Lucero v. Conn Appliances*, Case No. 01-16-0004-7141 (American Arbitration Association); *Dennis v. Progressive Leasing*, Case No. 01-16-0002-8798 (American Arbitration Association – Final Hearing); *Shani Marcus and Frieda Esses Ashkenazi v. CVS Pharmacy, Inc*., Case No.: 3:15-cv-259 PGS-LHG (D. N.J.); *Donnell Webster v. Conn Appliances, Inc*., Case No.: 01-16-0003-3774 (American Arbitration Association - Final Hearing); *Snyder v. Ocwen Loan Servicing*, Case No.: 1:14-cv-08461 (N.D. Ill); *Shamara Abrahams v. First Premier Bank*, Case No. 01-16-0003-8128 (American Arbitration Association - Final Hearing); *Wooten v. Conn Appliances, Inc*., Case No.: 01-16-0003-5557 (American Arbitration Association – Final Hearing); *Sandra West and Hector Membreno v. California Service Bureau*, Case No.: 4:16-cv-03124-YGR (N.D. Cal.); *Summers v. Conn Appliances*, Case No.: 01-16-0004-1183 (American Arbitration Association - Final Hearing); *Sheena Raffin v. Medicredit*, Case No.: 2:15-cv-04912-GHK (C.D. Cal) *Verina Freeman and Valecea Diggs v. Wilshire Commercial Capital*, Case No.: 2:15-cv-01428-WBS-AC (E.D. Cal);

5

*Tomeo v. Citigroup*, Case No.: 1:13-cv-04046 (N.D. Ill); *Douglas Jurist v. Receivables Performance Management, LLC*, Case Number 1240022589 (JAMS Arbitration); *April Turner v. Credit One Bank, N.A.*, Case No. 1440005239 (Arbitration Tribunals of JAMS - Final Hearing); *Frederick Luster and Narval Mangal v. Green Tree Serivicing. LLC*, Case No. 1:14-cv-01763-ELR (N.D. Georgia); *Jonathan Greisen v. Credit One Bank* (JAMS Arbitration); *Isaac Saucedo v. Credit One Bank* (JAMS Arbitration); *Naomi Blocker v. Credit One Bank* (JAMS Arbitration); *Winston Edwards III v. Credit One Bank*, Case No. 1260004354 (JAMS Arbitration); *Timothy Levis Johnson v. Credit One Bank* (JAMS Arbitration); *William Boden and Debra Boden v. Credit One Bank*, Case Nos: 1220054604/1220054605 (JAMS Arbitration – Final Hearing); *Rebecca Sanders v. Credit One Bank*, Case No.: 01-17-0001-6599 (American Arbitration Association - Final Hearing); *Donna Ace v. Credit One Bank* (JAMS Arbitration); *Lynette Alomar v. Credit One Bank* (JAMS Arbitration); *Tonya Anderson v. Credit One Bank* (JAMS Arbitration); *Gregory Andrews v. Credit One Bank* (JAMS Arbitration); *Alyce Baker v. Credit One Bank* (JAMS Arbitration); Terry Bardwell v. Credit One Bank (JAMS Arbitration); *Joshua Bare v. Credit One Bank* (JAMS Arbitration); *Lori Bason v. Credit One Bank* (JAMS Arbitration); *Christopher Batch v. Credit One* (JAMS Arbitration); *Tiffany Battle v. Credit One* (JAMS Arbitration); *Jean Bellingrodt v. Credit One Bank* (JAMS Arbitration); *Carolyn Bennett v. Credit One Bank* (JAMS Arbitration); *Shady Bennett v. Credit One Bank* (JAMS Arbitration); *Kelly Benson v. Credit One Bank* (JAMS Arbitration); *Dawn Berkey v. Credit One Bank* (JAMS Arbitration); *Sherry Best v. Credit One Bank* (JAMS Arbitration); *Daniel Blashack v. Credit One* (JAMS Arbitration); *Edith Blashack v. Credit One* (JAMS Arbitration); *Takia Brandon v. Credit One* (JAMS Arbitration); *Jeffrey Brown v. Credit One Bank* (JAMS Arbitration); *Karen Brown v. Credit One* (JAMS Arbitration); *Rebecca Burt v. Credit One Bank* (JAMS Arbitration); *Jennifer Burton v. Credit One Bank* (JAMS

Arbitration); *Janice Bushey v. Credit One Bank* (JAMS Arbitration); *Matthew Byers v. Credit One Bank* (JAMS Arbitration); *Darrell Byrom v. Credit One Bank* (JAMS Arbitration); *Eric Carlstedt v. Credit One Bank* (JAMS Arbitration); *Ronald Carnes v. Credit One Bank* (JAMS Arbitration); *Michelle Carter v. Credit One Bank* (JAMS Arbitration); *Brandon Chapman v. Credit One Bank* (JAMS Arbitration); *Derek Chism v. Credit One Bank* (JAMS Arbitration); *Bernard Combs v. Credit One Bank* (JAMS Arbitration); *Linda Cooper v. Credit One Bank* (JAMS Arbitration); *Janice Crenshaw v. Credit One Bank* (JAMS Arbitration); *Christopher Crisona v. Credit One Bank* (JAMS Arbitration); *Brent Crompton v. Credit One Bank* (JAMS Arbitration); *Teresa Cruz v. Credit One Bank* (JAMS Arbitration); Lisa Currey v. Credit One Bank (JAMS Arbitration); *Kenneth Curtis v. Credit One Bank* (JAMS Arbitration); *Melissa Damron v. Credit One Bank* (JAMS Arbitration); *Mike Dane v. Credit One Bank* (JAMS Arbitration); *Ayanna Davis v. Credit One Bank* (JAMS Arbitration); *Bruce Davis v. Credit One Bank* (JAMS Arbitration); *Matthew Day v. Credit One Bank* (JAMS Arbitration); *Angela Deal v. Credit One Bank* (JAMS Arbitration); *Bettina Deleon v. Credit One Bank* (JAMS Arbitration); *Nathaniel and Rowena Depano v. Credit One Bank* (JAMS Arbitration); *Melissa Dibenedetto v. Credit One Bank* (JAMS Arbitration); *Juan Dillon v. Credit One Bank* (JAMS Arbitration); *Sarah Peacock v. Credit One Bank* (JAMS Arbitration); *Kristina Dorffer v. Credit One Bank* (JAMS Arbitration); *Michael Dorsey v. Credit One Bank* (JAMS Arbitration); *Dacia Drury v. Credit One Bank* (JAMS Arbitration); *Kelly Dubel v. Credit One Bank* (JAMS Arbitration); *Winston Edwards III v. Credit One Bank* (JAMS Arbitration); *Kristi Evans v. Credit One Bank* (JAMS Arbitration); *Herby Fequiere v. Credit One Bank* (JAMS Arbitration); *Patrick Fitch v. Credit One Bank* (JAMS Arbitration); *Sharon Flowers v. Credit One Bank* (JAMS Arbitration); *Michelle Fong v. Credit One Bank* (JAMS Arbitration); *Joy Williams Frazier v. Credit One Bank* (JAMS Arbitration); *Carol Galanos v. Credit One Bank*

(JAMS Arbitration); *Lizette Garcia v. Credit One Bank* (JAMS Arbitration*); Olivia Garcia v. Credit One Bank* (JAMS Arbitration); *Corey Gill v. Credit One Bank* (JAMS Arbitration); *Amy Goetting v. Credit One Bank* (JAMS Arbitration); *Angel Gomez v. Credit One Bank* (JAMS Arbitration); *Derik Gonzalez v. Credit One Bank* (JAMS Arbitration); *Moises Govea v. Credit One Bank* (JAMS Arbitration); *Tonya Greer v. Credit One Bank* (JAMS Arbitration); *Melissa Grose v. Credit One Bank* (JAMS Arbitration); *Laurie Guerrattaz v. Credit One Bank* (JAMS Arbitration); *Scott Guntle v. Credit One Bank* (JAMS Arbitration); *Arlinda Hairston v. Credit One Bank* (JAMS Arbitration); *Bartley Harper v. Credit One Bank* (JAMS Arbitration); *Terrance Harris v. Credit One Bank* (JAMS Arbitration); *Cindy Hawkins v. Credit One Bank* (JAMS Arbitration); *Daniel Hawkins v. Credit One Bank* (JAMS Arbitration); *Tara Hicks v. Credit One Bank* (JAMS Arbitration); *Theresa Hill v. Credit One Bank* (JAMS Arbitration); *Troy and Tammy Hill v. Credit One Bank* (JAMS Arbitration); *Gary and Angela Hlavacek v. Credit One Bank* (JAMS Arbitration); *Virginia Hubbell v. Credit One Bank* (JAMS Arbitration); *Ashley Jackson v. Credit One Bank*(JAMS Arbitration); *Joseph James v. Credit One Bank* (JAMS Arbitration); *Donald Johnson v. Credit One Bank* (JAMS Arbitration); *Janet Johnson v. Credit One Bank* (JAMS Arbitration); *John Johnson v. Credit One Bank* (JAMS Arbitration); *Sonya Johnson v. Credit One Bank* (JAMS Arbitration); *Stephanie Johnson v. Credit One Bank* (JAMS Arbitration); *Kenneth Jones v. Credit One Bank* (JAMS Arbitration); *Michael and Marianne Jordan v. Credit One Bank* (JAMS Arbitration); *Robert Ketterman v. Credit One Bank* (JAMS Arbitration); *Leila Kier v. Credit One Bank* (JAMS Arbitration); *Samantha King v. Credit One Bank* (JAMS Arbitration); *Jessica Kirksey v. Credit One Bank* (JAMS Arbitration); *Angelica Korchmaros v. Credit One Bank* (JAMS Arbitration); *Yaroslav Kut v. Credit One Bank* (JAMS Arbitration); *Brad Larsen v. Credit One Bank* (JAMS Arbitration); *Sarah Lawhead v. Credit One Bank* (JAMS Arbitration); *Gary*

*Lawrence v. Credit One Bank* (JAMS Arbitration); *Timothy Levis Johnson v. Credit One Bank* (JAMS Arbitration); *Kemisha Levy v. Credit One Bank* (JAMS Arbitration); *Benjamin Lewis v. Credit One Bank* (JAMS Arbitration); *Jackie Likovic v. Credit One Bank* (JAMS Arbitration); *Lorenzo Lockwood v. Credit One Bank* (JAMS Arbitration); *Cathy Loreto v. Credit One Bank* (JAMS Arbitration); *Dawn Lowery v. Credit One Bank* (JAMS Arbitration); *Issac Lowery v. Credit One Bank* (JAMS Arbitration); *Leslie Malina v. Credit One Bank* (JAMS Arbitration); *Torre Mason v. Credit One Bank* (JAMS Arbitration); *Michael McDevitt v. Credit One Bank* (JAMS Arbitration); *Maya Christian McKeever v. Credit One Bank* (JAMS Arbitration); *Linda McNeal v. Credit One Bank* (JAMS Arbitration); *Amanda McNeill v. Credit One Bank* (JAMS Arbitration); *James McPartland v. Credit One Bank* (JAMS Arbitration); *Janice Metzger v. Credit One Bank* (JAMS Arbitration); *Dawn and Anthony Mighaccio v. Credit One Bank* (JAMS Arbitration); *Adriane Miles v. Credit One Bank* (JAMS Arbitration); *Keith Miller v. Credit One Bank* (JAMS Arbitration); *Dixie Dawn Moore v. Credit One Bank* (JAMS Arbitration); *Sabrina Moore v. Credit One Bank* (JAMS Arbitration); *Estefany Morel v. Credit One Bank* (JAMS Arbitration); *Juan Moreno v. Credit One Bank* (JAMS Arbitration); *Michelle Morgan v. Credit One Bank* (JAMS Arbitration); *Darlene Morrison v. Credit One Bank* (JAMS Arbitration); *Bobbie Murray and Random Booth v. Credit One Bank* (JAMS Arbitration); *Charlene Myers v. Credit One Bank* (JAMS Arbitration); *Denise Myers v. Credit One Bank* (JAMS Arbitration); *Rebecca Naylor v. Credit One Bank* (JAMS Arbitration); *Sharon Neville v. Credit One Bank* (JAMS Arbitration); *Jessanna Nunnery (Mitchell) v. Credit One Bank* (JAMS Arbitration); *Anthony Ogline v. Credit One Bank, N.A. and Midland Funding, LLC* (JAMS Arbitration); *Agnes Ousley v. Credit One Bank* (JAMS Arbitration); *Kaitlyn Peace v. Credit One Bank* (JAMS Arbitration); *Thomas Piner v. Credit One Bank* (JAMS Arbitration); *Melissa Prieto v. Credit One Bank* (JAMS Arbitration);

*Heather Pyle v. Credit One Bank* (JAMS Arbitration); *Nathan Quick v. Credit One Bank* (JAMS Arbitration); *Nikola Radojkovic v. Credit One Bank* (JAMS Arbitration); *Jessica Rainey v. Credit One Bank* (JAMS Arbitration); *Tyrone Randolph v. Credit One Bank* (JAMS Arbitration); *Derek Reid v. Credit One Bank* (JAMS Arbitration); *John Reyes v. Credit One Bank* (JAMS Arbitration); *Rich Richardson v. Credit One Bank* (JAMS Arbitration); *Deborah Ristoff v. Credit One Bank* (JAMS Arbitration); *David Robertson v. Credit One Bank* (JAMS Arbitration); *Heather Robertson v. Credit One Bank* (JAMS Arbitration); *Ryan Romero v. Credit One Bank* (JAMS Arbitration); *Kathy Rupp v. Credit One Bank* (JAMS Arbitration); *Camilla Sammons v. Credit One Bank* (JAMS Arbitration); *Paul Schaferling v. Credit One Bank* (JAMS Arbitration); *Christopher Shirley v. Credit One Bank* (JAMS Arbitration); *Jerryd Shoda v. Credit One Bank* (JAMS Arbitration); *Martha Gabriela Silva Canales v. Credit One Bank* (JAMS Arbitration); *Jay Simon v. Credit One Bank* (JAMS Arbitration); *Melissa Simpson v. Credit One Bank* (JAMS Arbitration); *Delisa Sims v. Credit One Bank* (JAMS Arbitration); *Gween Sims v. Credit One Bank* (JAMS Arbitration); *Bridgette Fretz v. Credit One Bank* (JAMS Arbitration); *Christine Sokoloski v. Credit One Bank* (JAMS Arbitration); *Kyle Sorensen v. Credit One Bank* (JAMS Arbitration); *Paula Spivey v. Credit One Bank* (JAMS Arbitration); *Joshua Stack v. Credit One Bank* (JAMS Arbitration); *Anturuan Stallworth v. Credit One Bank* (JAMS Arbitration); *Rebecca Stanley v. Credit One Bank* (JAMS Arbitration); *Alisha Stewart v. Credit One Bank* (JAMS Arbitration); *Helen Stuber v. Credit One Bank* (JAMS Arbitration); *Pamela Swanson v. Credit One Bank* (JAMS Arbitration); *Shannon Taylor v. Credit One Bank* (JAMS Arbitration); *Angie Teneyck v. Credit One Bank* (JAMS Arbitration); *Stephanie Thornton v. Credit One Bank* (JAMS Arbitration); *Connie Tolbert v. Credit One Bank* (JAMS Arbitration); *Tamara Tuggle v. Credit One Bank* (JAMS Arbitration); *Leo Underhill v. Credit One Bank* (JAMS Arbitration); *Megan Veraldi v. Credit One Bank* (JAMS

Arbitration); *Samantha Walters v. Credit One Bank* (JAMS Arbitration); *Brenda Walton v. Credit One Bank* (JAMS Arbitration); *Thomas Watson v. Credit One Bank* (JAMS Arbitration); *Anita Welch v. Credit One Bank* (JAMS Arbitration); *Trisha West v. Credit One Bank* (JAMS Arbitration); *Jill Williams v. Credit One Bank* (JAMS Arbitration); *Marie Wills v. Credit One Bank* (JAMS Arbitration); *Joy Wilson v. Credit One Bank* (JAMS Arbitration); *Christy Wineinger v. Credit One Bank* (JAMS Arbitration); *Sean Woodburn v. Credit One Bank* (JAMS Arbitration); *Michelle Robertson v. Navient Solutions, Inc*., Case No.: 8:17-cv-01077-RAL-MAP (M.D. Florida Tampa); *Cynthia Davis v. Conn Appliances,* Case No.: 01-0000-9774 (American Arbitration Association); *Tonya Erin Stevens v. Conn Appliances, Inc*., Case No. 01-16-0003-2324, (American Arbitration Association); *Aaron Manopla and Evelyn Manopla v. Home Depot USA, Inc*, Case No.: 3:15-cv-01120-PGS-TJB (District of New Jersey); *Laticia Lewis v. Ocwen Loan Servicing, LLC*, Case No.: 17-cv-01104-WJM-KHR (D. Colo); *Mirella Covarrubias v. Ocwen Loan Servicing, LLC*, Case No.: 5:17-cv-00904-FMO-SP (C.D. Cal); *Gregory Franklin v. Ocwen Loan Servicing, LLC*, Case No.: 3:17-CV-02702-JST (N.D. Cal); *Richard Quinones v. Ocwen Loan Servicing, LLC*, Case No.: 2:17-cv-03526-DDP-FFM (C.D. Cal); *Susan Embree v. Ocwen Loan Servicing, LLC*, Case No.: 2:17-CV-00156-JLQ (E.D. Wash); *John Herrick v. Godaddy.com, LLC*, Case No.: 2:16-cv-00254-DJH (D. Az); *Teresa Caserez v. Credit One Bank, N.A*., Case No.: 140003908 (JAMS Final hearing); *Johnnie Williams, Jr. v. Conn Appliances, Inc*., Case No.: 01-17-0001-5149 (American Arbitration Association - Final Hearing); Steve Bartolone and *Karen Bartolone v. Ocwen Loan Servicing, LLC*, Case No.: 8:17-cv-00821-JLS-JDE (C.D. Cal); *James Hunter v. Navient Solutions, LLC*, Case No.: 1460004086 (JAMS Arbitration); *Edith Wright v. Conn Appliances, Inc*., Case No.: 01-17-0006-8865 (American Arbitration Association); *Brian Dennis v. Conn Appliances, Inc*., Case No.: 01-17-0006-3428 (American Arbitration Association);

11

*Wavely Jacobs v. Conn Appliances, Inc*., Case No.: 01-17-0006-1673 (American Arbitration Association); *Lilly, Catherine v. Citigroup Inc. d/b/a Citi*, Case No.: 01-0001-9107 (American Arbitration Association); *Raul Vargas v Conn Appliances*, Case No.: 01-17-0000-4085 (American Arbitration Association); *Lina Trivedi v Web Bank and Bluestem Brands, Inc. d/b/a Fingerhut*, Case No.: 01-18-0000-2860 (American Arbitration Association - Final Hearing); *Sara Diaz-Lebel v TD Bank USA, N.A.; and Target Corporation*, Case No.: 0:17-cv-05110-MJD-BRT (D.Minn); *Karl Critchlow v Sterling Jewelers Inc. d/b/a Jared Galleria of Jewelers, Inc*., Case No.: 8:18-cv-00096-JSM-JSS (M.D. Flor Tampa Division); *Latonja Anderson v Credit One Bank*, Case No. 1440005234 (JAMS Arbitration – final hearing); *Sandra Harris v Credit One Bank, N.A*., Case No.: 144005582 (JAMS Arbitration - Final Hearing); *Deborah Clark v FDS Bank and Department Stores National Bank*, Case No.: 6:17-cv-00692-CEM-TBS (M.D. Flor - Evidentiary Hearing); *Shanica Spencer v Conn Appliances, Inc*., Case No.: 01-17-0007-5670 (American Arbitration Association); *Thomason Max v Conn Appliances, Inc*., Case No.: 01-18-0001-9880 (American Arbitration Association – final hearing); *Harold Allen v First National Bank of Omaha*, Case No.: 3:18-CV-1216-RDM (M.D. Penn); *DEBRA WOMACK v CREDIT ONE BANK, N.A*., Case No.: 1260004369 (JAMS Arbitration – Final Hearing); *Nancy Carlin v Navient Solutions, LLC*, Case No.: 1:19-cv-00491-LMB-TCB (E.D. Virginia); *Adam Lieberman v Credit One Bank*, Case No. 1425025196 (JAMS ARBITRATION - Final Hearing); *Karen Saunders v Dyck O'Neal, Inc*., Case No.: 1:17-cv-00335 (W.D. Mich Southern Division); *Benjamin Tarshish v Comcast Corporation*, Case No.: 01-19-0000-0815 (American Arbitration Association - Final Hearing); *Aaron Williams v Pillpack, LLC*, Case No.: 3:19-cv-05282-RBL (W.D. Wash); *Michael Mendell v American Medical Response, Inc*., Case No.: 3:19-cv-01227-BAS-KSC (S.D. Cal); *April Parchman v SLM Corporation, Navient Corporation, Navient Solutions Inc. f/k/a Sallie Mae Inc., and Sallie Mae*

*Bank*, Case No.: 2:15-cv-02819-JTF-cgc (W.D. Tenn Western Division); *Marcell Hernandez and Wayne Wollertz v Conn Applicance, Inc*., Case No.: 01-19-0002-0468 (American Arbitration Association).

## Work and Analysis in this Case

14.     I have reviewed various documents and evidence from this case relating to the telephone calls made to Plaintiff and the putative class. Specifically, I have reviewed the following documents: 1) Exhibit B - DOC-351062A1; 21) Exhibit C - IMS Do Not Contact Solutions; 22) Exhibit D - About IMS; 23) Exhibit E - IMS Customer List; 24) Exhibit F - wireless block identifier; 25) Exhibit G – NPAC.

15.     Additionally, I reviewed the call detail records KCI000001.xlsx thru KCI000019.xlsx ("Call Detail Records") and account note data files KCI000020.xlsx thru KCI000023.xlsx ("HERO notes" or "Account Notes").

## Identification of Wireless Numbers

16.     Given portions of Mr. Kostyun's report,[1] I was first asked to simply compare or "scrub" the call records exported from the dialing system, used by KCI, against two telephone number databases widely used to identify the telephone numbers that are assigned to cell phones, and identify whether the telephone numbers assigned to cell numbers have been previously or subsequently reassigned or "ported" to or from landlines.

17.     I am familiar with the databases used to determine whether a particular telephone number is assigned to a cell phone, and determine whether the number was ever reassigned from a landline to a cell phone or vice versa, because I personally use them on a regular basis. I have personally compared lists of telephone numbers against these same databases to identify which

---

[1]     References to Mr. Kostyun's report are cites as Kostyun ¶ _.

numbers are cell phones, and whether and when numbers had been reassigned from landline to cell phone or vice versa, on a significant number of occasions.

18. The database I regularly use and rely on in my business to determine if a telephone number has been assigned to a cell phone is the Interactive Marketing Solutions or "IMS" wireless cell block identifier list. This list was compiled by Interactive Marketing Solutions and the Direct Marketing Association. *See Exhibit C - IMS Do Not Contact Solutions; Exhibit D - About IMS; Exhibit E - IMS Customer List; Exhibit F - wireless block identifier*.

19. The FCC's Enforcement Bureau, Telecommunications Consumers Division ("TCD"), has treated the IMS database as "an industry standard, commercially available database of known assigned and ported wireless numbers . . . ." FCC 14-59, 29 FCC Rcd 5537, ¶7, fn.16 (rel. May 8, 2014) ("TCD compared the call records to an industry-standard, commercially available database of known assigned and ported wireless numbers to determine whether the Company made robocalls to wireless telephones. *See* Interactive Marketing Solutions, Inc. Website, http://www.ims-dm.com/index.shtml"); *see also* DA 13-265, 28 FCC Rcd 1840, ¶9 and fn.25 (rel. March 15, 2013), citing Interactive Marketing Solutions, Inc. Website http://www.ims-dm.com/index.shtml); and DA 15-530, 30 FCC Rcd 4548, ¶7 and fn.24 (rel. May 4, 2015), citing Interactive Marketing Solutions, Inc. Website Homepage www.ims-dm.com/mvc/index.php.

20. The database I regularly use and rely on in my business to determine whether a cell phone number has been reassigned or "ported" to or from a landline is the Neustar (Now, iconnectiv[2]) ported-to-wireless list and ported-to-landline list. Neustar/iconnectiv is the ultimate resource of these lists because it was selected by the FCC to be the administrator of the Number

---

[2]      *See* Exhibit B - DOC-351062A1

Portability Administration Center (NPAC), the telecommunication industry's common, authoritative database for routing calls for numbers ported between landline and wireless. (*See Exhibit G – NPAC, Exhibit B - DOC-351062A1*). The FCC also appointed Neustar/iconnectiv as the North American Numbering Plan Administrator, which is responsible for the U.S. telephone numbering system. (FCC 03-153, 18 FCC Rcd 14014, ¶170 (rel. July 3, 2003) ("NeuStar as the North American Numbering Plan Administrator, the National Pooling Administrator, and the LNP Administrator makes information available that can assist telemarketers in identifying numbers assigned to wireless carriers.")).

21.     My process was to identify wireless telephone numbers identified if they were wireless at the time they were called.  My process does account for a 15 day grace period[3] for numbers ported from landline to wireless.  If asked, I could easily remove the 15 day grace period.

22.     To do this, I first compared all of the telephone numbers listed in the logs against the numbers listed in the IMS database. This involved simply copying the Defendant's call records and the IMS wireless cell block identifier list into a conventional database program and then executing a basic command telling the program to compare the two lists to identify the matches.

23.     Then I compared the list of phone numbers in Defendant's call records to the list of phone numbers in the Neustar/iconnectiv database to see which ones had been reassigned from landline to cell or from cell to landline. This involved the same process described above. I copied the Neustar/iconnectiv ported number lists into the relational database with Defendant's call records and executed a basic command telling the program to compare the lists to identify the matches, and simultaneously identify which of the numbers that were reassigned were nevertheless

---

[3]     In my process, I counted a number as wireless if it was called later than 15 days after the number was ported to wireless.

wireless numbers at the time of the call. The lists include a date field showing when each number was reassigned or ported, if any.

24.     Furthermore, the process by which qualifying calls and the dates those calls were made are compared to the IMS Files includes a specific comparison to ensure that the status of each qualifying call is or is not wireless at the time of the call.

25.     Wireless phone numbers are initially assigned to wireless carriers in large blocks of numbers.  Using the wireless block identifier, it is very easy to identify those numbers originally assigned as wireless numbers.  When a user of those numbers decide to port that wireless number to landline (or vice versa), a request is made through Neustar/iconnectiv who then re-assigns that number to landline.  Neustar/iconnectiv then makes that list of ported numbers available every night.  Each nightly update includes ported numbers from the beginning of number portability, so all that is required to identify ported numbers with 100 percent accuracy is by using a ported number list that is more recent than the last call made.  Using the date of the calls and comparing that with the date of the ported numbers, I was able to identify with 100 percent accuracy those calls that were made to a number ported to wireless after those numbers were ported (additionally, I identified those calls with a 15 day grace period of the porting of that number).

**Wireless v. Landline Telephone Numbers**

26.     Mr. Kostyun's report states that "[t]here is no single, publicly available database that can identify whether a given telephone number is even *currently* assigned to a wireless status, much less the ability to identify whether a number was wireless as of some date in the past." Kostyun ¶ 27 (emphasis in original). Mr. Kostyun does, however, seem to backtrack from this position in following paragraphs, where he acknowledges that Telcordia Technologies, d/b/a iconectiv maintains databases that are able to identify, for example, "the historical wireless status

of a phone number" by way of "a wireless block identifier file, as well as a ported number file." Kostyun ¶ 28.

27.    To be clear, iconectiv is able to (1) identify whether telephone numbers are *currently* assigned to wireless carrier service; and (2) identify whether telephone numbers have been ported from a landline to a wireless service, or vice versa, and the dates that those telephone numbers were ported, through its Ported Numbers Audit File.

28.    Iconectiv is the administrator of the Number Portability Administration Center (NPAC), the telecommunication industry's common, authoritative database for routing calls for numbers ported between landline and wireless. *See Exhibit G – NPAC, Exhibit B - DOC-351062A1.* The FCC also appointed Neustar/iconectiv as the North American Numbering Plan Administrator, which is responsible for the U.S. telephone numbering system. (FCC 03-153, 18 FCC Rcd 14014, ¶170 (rel. July 3, 2003) ("NeuStar as the North American Numbering Plan Administrator, the National Pooling Administrator, and the LNP Administrator makes information available that can assist telemarketers in identifying numbers assigned to wireless carriers.")).

29.    Simply stated, the ported number list by iconectiv is a result of the actual porting of numbers by iconectiv. Additionally, the list contains the history of the phone number including all ports from 2003 to present and the dates of those ports. Mr. Kostyun, however, speculates that one must have been downloading every update since porting began. *See* Kostyun ¶¶ 28-29. Had Mr. Kostyun been a subscriber to IMS Wireless Block Identifier and Wireless – Ported Numbers services, he would know each download of the ported number list contains a complete accounting of the assignment of ported numbers from 2003 to present, and the wireless block identifier from 2010 to present; both contain dates for each change, and I use those dates in comparison to the call dates when running my analysis.

30.     As I explained in ¶19, the IMS Cell Block Identifier list has been provided by IMS since 2002 and is the authoritative list to determine if numbers have been assigned to wireless or landline.

31.     I was provided access to the IMS[4] service to subscribe to iconectiv's Wireless Block Identifier and Wireless – Ported Numbers services, which IMS describes as follows:

> The Wireless Block Identifier® file identifies those Area codes and Exchanges or blocks of numbers assigned to wireless carriers active within the North American Numbering Plan in the U.S. and Canada.[5]

> The Ported Numbers File. In December 2003, the FCC allowed consumers to keep an assigned number and use it for either their landline or cell phone. Consequently, numbers previously assigned to a wireless carrier may now be assigned to a landline telephone and vice versa. We provide two files to help identify ported numbers.

>> 1. The landline-to-wireless file contains all numbers previously identified as being assigned to wired carriers that are now being used for wireless devices. These numbers must be suppressed from calling.

>> 2. The wireless-to-landline file contains all numbers previously identified as being assigned to wireless carriers that are now being used for landline telephones. These numbers may be called.[6]

32.     Through the IMS subscription, I used the Wireless Block Identifier by matching the first 7 positions of the 10 digit telephone numbers of the Call Detail Records to the 7 telephone number digits in the Wireless Block Identifier file provided by the IMS subscription, and flagged every matching telephone number as originally assigned as a wireless telephone number, and every non-matching telephone number as a landline telephone number. Using specialized queries I only

---

[4]     IMS is the "country's largest single-source supplier of Wireless Identification Products," and it, along with the iconectiv databases I accessed through IMS, are industry standard resources for identifying wireless telephone numbers. https://www.ims-dm.com/mvc.

[5]     https://www.ims-dm.com/mvc/page/wireless-block-identifier/.

[6]     https://www.ims-dm.com/products/WBI_FAQs.pdf.

mark the number as originally assigned as wireless if the date of the call fell between an added and removed date in the Wireless Block Identifier.

33.     For all records flagged in ¶ 32 as "landline," I matched the 10-digit telephone numbers of Call Detail Records to the 10-digit telephone number in the landline-to-wireless file provided by the Ported Numbers File, and flagged every matching entry as a wireless telephone number. Using specialized queries I only mark the number as originally assigned as wireless if the date of the call fell between an added and removed dates in the Ported to Landline list.

34.     For all records flagged in ¶ 32 as "wireless", I matched the 10-digit telephone numbers of Call Detail Records to the 10-digit telephone number in the wireless-to-landline file provided by the Ported Numbers File, and flagged every matching entry as a landline telephone number. Using specialized queries I only mark the number as originally assigned as wireless if the date of the call fell between an added and removed date in the Ported to Wireless list.[7]

35.     As a result, I was able to identify from the Call Detail Records approximately 1,513,843 calls, or intended or initiated calls, to approximately 256,748 unique wireless telephone numbers, and approximately 732,187 calls, or intended or initiated calls, to approximately 130,505 unique landline telephone numbers.[8]

---

[7]     Both the Cell Block Identifier and Ported Number lists contain an audit file which is a complete accounting of the telephone numbers' status including the date.

[8]     I did not exclude from the approximate referenced calls, or intended or initiated calls, those for which the "Call Duration" column entry in the Call Detail Records was blank. Similarly, I did not exclude from the approximate referenced calls, or intended or initiated calls, those associated with "Call Result" codes—as identified by the Outbound Option Guide for Unified Contact Center Enterprise, Release 11.5(1)—such as "13," which reads "Dialer stopped dialing customer due to lack of agents," and "2," which reads "Error condition while dialing." This likely accounts for the difference between, for instance, the approximate referenced 2,245,730 calls, or intended or initiated calls, and Defendant's answer to Plaintiff's Interrogatory No. 10 that suggests Defendant "made approximately 1.76 million calls to 372,390 unique telephone numbers using the Cisco dialing system." I am able to, and would if asked to do so, filter the approximate referenced calls,

36.     As well, I was able to identify from the Call Detail Records approximately 539,789 calls, or intended or initiated calls, associated with a "call result" code of "12," to approximately 152,709 unique wireless telephone numbers.

37.     I understand that Mr. Kostyun speculates that this process is subject to unknown errors in the event iconectiv fails to accurately update its wireless block and ported number records, but as I explained in ¶ 29 I have no reasonable basis to believe that iconectiv's data is defective or prone to any of the errors Mr. Kostyun identifies in his report at Kostyun ¶¶ 28-29.

38.     IMS indicates that the process I employed is tested and accurate. IMS states that matches to the Wireless Block Identifier file, discussed in ¶¶ 18, 19, 30, will identify approximately 98% of wireless telephone numbers, and the Ported Number matching process, discussed in ¶¶ 19, 20, 28, 29 will identify the remaining 2% of wireless telephone numbers. Over the last two decades, using these lists daily, I have never seen a false identification of wireless numbers from these lists.

39.     As a result of this analysis, it is my opinion that Plaintiff is able to accurately and reliably identify whether the telephone numbers called by Defendant are wireless or landline telephone numbers at the time that Defendant called those telephone numbers.

**Application of Plaintiff's search strings to Defendant's HERO system notes**

40.     Next, Mr. Kostyun argues that certain of Plaintiff's proposed search terms are overly-inclusive, in that they encompass account notes that do not indicate that Defendant was told that it called a "wrong number," but rather, that the search string indicates something else. *See* Kostyun ¶¶ 40-42.

---

or intended or initiated calls, by lack of an entry in the "Call Duration" column, and by way of "Call Result" codes or combinations of them.

41.     Mr. Kostyun ignores, however, the manner by which Plaintiff's proposed search terms provide an efficient starting point for determining whether a called party instructed Defendant that it was calling a wrong number.

42.     First I excluded any HERO notes where a rental order number contained any phrase that may produce a false positive which easily addresses Mr. Kostyun's concerns. *See* Kostyun ¶¶ 40-42. Those phrases are: "NOT WRONG #", "NOT WRONG NUMBER", "NOT WRONG#", "NOT wrong phone", "NOT wrong tel", "POSSIBLE WRONG #", "POSSIBLE WRONG NUMBER", "POSSIBLE WRONG#", "POSSIBLE wrong phone", "POSSIBLE wrong tel", "GOOD #", "GOOD NUMBER", "GOOD#", "GOOD phone", "GOOD tel", "WRONG NUMBER OF UNITS", "Verified number", "but to wrong", "good contact number", "CRECT NUMBER", "NUMBER IS NOT WRONG", "patient sounded confused", "PHYSICIAN PHONE", "CALL TO DR", "CALLED DR", "CALL DR", "spoke to receptionist", "WRONG NUMBER OF", "kci1.com", "pt is a min", "pt is min", "patient is a min". I also removed any single entries based on the following keywords: "NOT WRONG #", "NOT WRONG NUMBER", "NOT WRONG#", "NOT wrong phone", "NOT wrong tel", "GOOD #", "GOOD NUMBER", "GOOD#", "GOOD phone", "GOOD tel", "Verified number", "good contact number", "CRECT NUMBER", "NUMBER IS NOT WRONG", "patient sounded confused", "pt is a min", "pt is min", "patient is a min"

43.     I filtered Defendants HERO notes based on the presence of the following words or phrases, and my filter yielded the following results:

| Search Term | Approximate Account Notes Containing the Search Term |
|---|---|
| Wrong # | 5,648 |
| Wrong Phone | 831 |
| Wrong Number | 10,084 |
| Incorrect Phone | 202 |

| Incorrect Number | 0 |
|---|---|
| Bad Phone | 33 |
| wrong tel | 29 |
| WRONG# | 903 |

**Associating Telephone Numbers with HERO notes**

44.     Next, Mr. Kostyun notes that a number of HERO system notes do not contain any specific references to the telephone number Defendant associates with that corresponding account note. *See* Kostyun ¶¶ 43-47.

45.     Mr. Kostyun also identifies certain account entries that reference multiple telephone numbers within a single account note as evidence of challenges in identifying "wrong number" calls based on the account notes. Kostyun ¶¶ 55-60.

46.     But contrary to Mr. Kostyun's assertion it is not difficult or burdensome to identify the telephone numbers that correspond with each HERO system account note.

47.     I was able to match every account note with a corresponding telephone call by combining the data in KCI000001-19—which identifies every telephone call Defendant placed by using its Cisco dialer during the relevant time period—with the data in KCI000020-23—the HERO system notes.

48.     I was rather perplexed by Mr. Kostyun's approach. The phone number called was in the notes field. I simply used "regular expressions" to extract the phone numbers called in the notes field and populated a new column with that phone number and joined it with the Call Detail Records by both date and phone columns to ensure that each note was for a specific call in each record of the Call Detail Records. This effectively verifies the number in the notes field was indeed the number called two ways: 1) the date and phone had to match in both the Account Notes and the Call Detail Records, and 2) by extracting the phone number out of the notes field this

22

completely avoids Mr. Kostyun's approach of joining by the rental order number to get all the phone numbers for a particular account and "guessing" which number was actually called.

49.     As a result of my analysis in ¶ 43, I identified the specific telephone calls that resulted in each account note in Defendant's HERO note system, and the telephone number to which that specific call was placed.

50.     I then reduced the list of calls to those to cell numbers where the date of the call was on or after the date of the notation of wrong number. I did this by creating columns identifying the date of the notice for each number, whether the number was the first call placed by the dialer, and whether the number was a wireless number. I then joined this list with the Account notes to populate the call detail records with the additional columns from the Account Notes.

51.     In conclusion, I was able to overcome the issues identified in Mr. Kostyun's report at Kostyun ¶¶ 43-47 and 55-60 by matching the phone numbers and dates in KCI000020-23 with the phone numbers and dates in KCI000001-19, resulting in an update to the summary table in ¶ 43 to show—for example—the total number of wireless telephone numbers that Defendant called after it received notice of a wrong or incorrect number as identified by Defendant's account notes:

| Search Term | Approximate Account Notes Containing the Search Term | Approximate Unique Wireless Telephone Numbers With Calls Following Entry of an Account Note Containing the Search Term | Approximate Total Number of Calls to Wireless Telephone Numbers Following Entry of an Account Note Containing the Search Term |
|---|---|---|---|
| Wrong # | 5,648 | 906 | 1221 |
| Wrong Phone | 831 | 126 | 178 |
| Wrong Number | 10,084 | 1206 | 1787 |
| Incorrect Phone | 202 | 8 | 9 |

23

| Incorrect Number | 0 | 0 | 0 |
|---|---|---|---|
| Bad Phone | 33 | 0 | 0 |
| wrong tel | 29 | 1 | 1 |
| Wrong# | 903 | 181 | 214 |

52.     And, by applying this methodology, I also determined the total number of telephone calls to the wireless telephone numbers that Defendant called after it received notice of a "wrong number," as identified in ¶ 51, that are associated with a "call result" code of "12," which indicates an outbound call that was designated by the Cisco dialer to play a prerecorded voice message upon connection of the call:

| Search Term | Approximate Unique Wireless Telephone Numbers With Calls Following Entry of an Account Note Containing the Search Term | Approximate Total Number of Unique Wireless Telephone Numbers that Received a Call with a "12" Call Result Code Following Entry of an Account Note Containing the Search Term | Approximate Total Number of Calls to Unique Wireless Telephone Numbers Containing a "12" Call Result Code Following Entry of an Account Note Containing the Search Term |
|---|---|---|---|
| Wrong # | 906 | 85 | 97 |
| Wrong Phone | 126 | 25 | 28 |
| Wrong Number | 1206 | 172 | 187 |
| Incorrect Phone | 8 | 1 | 1 |
| Incorrect Number | 0 | 0 | 0 |
| Bad Phone | 0 | 0 | 0 |
| wrong tel | 1 | 0 | 0 |
| Wrong# | 181 | 18 | 20 |

**Call Data**

53.     Given the documents and information referenced at ¶¶ 35-36 and 44-52 above, I am able to determine the following:

A.  The number of cellular telephone numbers to which Defendant placed calls during the relevant time period by using its Cisco dialer, and with which Defendant associates each of the following notations in its HERO notes:

24

   1. Wrong
   2. Wrong Phone
   3. Wrong Number
   4. Incorrect Phone
   5. Incorrect Number
   6. Bad Phone
   7. wrong tel
   8. Wrong#

B. For the 8 groups of cellular telephone numbers referenced above at "A," the number of calls Defendant placed to each of them during the relevant time period by using its Cisco dialer.

C. For the 8 groups of cellular telephone numbers referenced above at "A," the number of calls Defendant placed to each of them during the relevant time period by using its Cisco dialer *after* Defendant associated them with the subject notations in its HERO notes.

D. The number of cellular telephone numbers to which Defendant placed calls during the relevant time period by using its Cisco dialer that resulted in a "call result" code of "12," and with which Defendant associates each of the following notations in its HERO notes:

   1. Wrong
   2. Wrong Phone
   3. Wrong Number
   4. Incorrect Phone
   5. Incorrect Number
   6. Bad Phone
   7. wrong tel
   8. Wrong

E. For the 8 groups of cellular telephone numbers referenced above at "D," the number of calls that resulted in a "call result" code of "12" that Defendant placed to each of them during the relevant time period by using its Cisco dialer.

F. For the 8 groups of cellular telephone numbers referenced above at "D," the number of calls that resulted in a "call result" code of "12" that Defendant placed to them during the relevant time period by using its Cisco dialer *after* Defendant associated them with the subject notations in its HERO notes.

54.    Also, by using the same general methodology, all of the data referenced by ¶ 53 is

searchable and groupable by "Campaign Name," including:

   1. lm_AOB_Sunmed_Agent_Campaign
   2. lm_AOB_Agent_Campaign

3.  lm_Delivery_Agent_Campaign
4.  lm_Discharge_IVR_Campaign
5.  lm_Dispatch_Agent_Campaign
6.  lm_Incl_Weather_IVR_Campaign
7.  lm_OnshrDelivery_Agent_Campaign
8.  lm_OnshrReturns_Agent_Campaign
9.  lm_OnshrWelcome_Agent_Campaign
10. lm_Onshr_DocColl_Agent_Campaign
11. lm_POD_AOB_48_Hours_Campaign
12. lm_POD_Sunmed_Agent_Campaign
13. lm_Returns_Agent_Campaign
14. lm_Returns_SunMed_Campaign
15. lm_POD_Agent_Campaign
16. lm_Supplies_IVR_Campaign


I declare that the foregoing is true and correct subject to the laws of perjury of the United States.

Executed in Spring Valley, CA, on this 5th day of October, 2020.


Jeffrey A. Hansen

# EXHIBIT  A

**Jeffrey A. Hansen**
**Spring Valley, CA 91977**
**(619) 270-2363**
**Email:  Jeff@TCPAwitness.com**

**SUMMARY OF QUALIFICATIONS:**
IT certified professional with over 30 years of extensive troubleshooting experience

**PROFESSIONAL EXPERIENCE:**

**Testified in the following:**

I have been called to testify in the following civil matters:

1. *Craig Casey v. Valley Center Insurance Agency Inc.*, Case No. 37-2008-00004378-SC-SC-CTL (San Diego Superior Court)
2. *Stemple v. QC Holdings, Inc.*, Case No. 12-CV-1997-CAB-WVG (S.D. Cal.)
3. *Hahn v. Massage Envy Franchising*,  Case No: 3:12-cv-00153-DMS-BGS (S.D. Cal.)
4. *Abdeljalil v. General Electric Capital Corporation*, Case No: 12-cv02078-JAH-MDD (S.D. Cal.)
5. *Jasminda Webb v. Healthcare Revenue Recovery Group, LLC* Case No: C 13-0737 JD (N.D. Cal.)
6. *Balschmiter v TD Auto Finance, LLC,* Case No: 2:13-cv-01186 (E.D. Wisc.)
7. *Jordan Marks v Crunch San Diego, LLC,* Case No. 14-CV-0348-BAS (BLM) (S.D.Cal.)
8. *Peter Olney v Job.com,* Case No: 1:12-cv-01724-LJO-SKO (E.D. Cal.)
9. *Carlos Guarisma v ADCAHB Medical Coverages, Inc. and Blue Cross and Blue Shield of Florida, Inc.*, Case No: 1:13-cv-21016-JLK (S.D. Fla.),
10. *Farid Mashiri v Ocwen Loan Servicing, LLC,* Case No: 3:12-cv-02838 (S.D. Cal.)
11. *Monty J. Booth, Attorney at Law, P.S. v Appstack, Inc.*, Case No. 2:13-cv-01533-JLR (W.D. Wash.)
12. *Rinky Dink, Inc. d/b/a Pet Stop v World Business Lenders, LLC,* Case No. 2:14-cv-00268-JCC (W.D. Wash.)
13. *Michael Reid and Dave Vacarro v. I.C. Sytems, Inc.*, Case No. 2:12-cv-02661-ROS (D. Ariz.)
14. *Jeffrey Molar v NCO Financial Systems* Case No. 3:13-cv-00131-BAS-JLB (S.D. Cal.)
15. *Latonya Simms v Simply Fashion Stores LTD, and ExactTarget, Inc.*, Case No. 1:14-CV-00737-WTL-DKL (D. Ind.),
16. *Sueann Swaney v Regions Bank,* Case No. CV-13-RRA-0544-S (N.D. Ala.)
17. *Hooker v SiriusXM,*  Case No. 4:13-cv-00003 (AWA) (E.D. Va.)
18. *Diana Mey v Frontier Communications,* Case No. 13-cv-01191-RNC (D. Conn.)
19. *Rachel Johnson v Yahoo! Zenaida Calderin v Yahoo!* Case No. 14-cv-2028 14-cv-2753 (N.D. IL)
20. *Philip Charvat v Elizabeth Valente,* Case No. 12-cv-5746 (N.D. IL)
21. *Robert Zani v Rite Aid Hdqtrs. Corp.*, Case No. 14-cv-9701(AJN)(RLE)(S.D. NY)
22. *A.D. v Credit One Bank* Case No. 1:14-cv-10106 (N.D. IL)
23. *Oerge Stoba, and Daphne Stoba v Saveology.com, LLC, Elephant Group, Inc., Time Warner Cable, Inc.* Case No. 13-cv-2925-BAS-NLS (S.D. Cal.)

24. *Shyriaa Henderson v United Student Aid Funds, Inc.* Case Number: 3:13-cv-1845-L-BLM (S.D. Cal.)
25. *Marciano v Fairwinds Financial Services* Case No. 6:15-CV-1907-ORL-41 KRS (M.D. Fla)
26. *Alice Lee v Global Tel*Link Corporation* Case No. 2:15-cv-02495-ODW-PLA [consolidated with 2:15-cv-03464-ODW-PLA (C.D. Cali)
27. *Alan Brinker v Normandin's* Case No. 5:14-cv-03007-EJD-HRL (N.D. Cali)
28. *Spencer Ung v Universal Acceptance Corporation,* Case No. 15cv127 RHK/FLN (D. Minn)
29. *Seana Goodson v Designed Receivable Solutions,* Case No. 2:15-cv-03308-MMM-JPR (C.D. Cal)
30. *Dominguez v Yahoo!, Inc*., Case No. 2:13-cv-01887 (E.D. Penn)
31. Eli Ashkenazi v Bloomingdales, Inc., Case No. 3:15-cv-02705-PGS-DEA (D. N.J.)
32. *Abante Rooter and Plumbing, Inc. v Birch Communications, Inc.* Case No. 1:15-cv-03562 (N.D. GA)
33. *Roark v Credit One Bank,* Case No. 0:16-cv-00173-RHK-FLN (D.Minn)
34. *Carl Lowe And Kearby Kaiser v CVS Pharmacy, Inc., Minuteclinic, LLC, and West Corporation*, Case No. 1:14-cv-03687 (N.D. Ill)
35. *Zaklit v Nationstar Mortgage, LLC.*, Case No. 5:15-CV-02190-CAS-KK (C.D. Cal)
36. *Charles Banks v Conn Appliance, Inc.*, Case No. 01-16-0001-0736 (American Arbitration Association)
37. *Rajesh Verma v Memorial Healthcare Group*, Case No. 3:16-CV-00427-HLA-JRK (M.D. Fla)
38. *Herrick v Godaddy.com*, Case No. 2:16-cv-00254-DJH (D.AZ)
39. *In Re: Monitronics International, Inc., Telephone Consumer Protection Act Litigation*, Case No. 1:13-md-02493-IMK-JSK (N.D.W.V.)
40. *Diana Mey v Ventura Data, LLC And Public Opinion Strategies*, Case No. 5:14-CV-123 (N.D.W.V.)
41. *Lucero v Conn Appliances*, Case No. 01-16-0004-7141 (American Arbitration Association)
42. *Dennis v Progressive Leasing*, Case No. 01-16-0002-8798 (American Arbitration Association – Final Hearing)
43. *Shani Marcus and Frieda Esses Ashkenazi v CVS Pharmacy, Inc.,* Case No.: 3:15-cv-259 PGS-LHG (D. N.J.)
44. *Donnell Webster v Conn Appliances, Inc*., Case No.: 01-16-0003-3774 (American Arbitration Association - Final Hearing)
45. *Snyder v Ocwen Loan Servicing*, Case No.: 1:14-cv-08461 (N.D. Ill)
46. *Shamara Abrahams v First Premier Bank*, Case No. 01-16-0003-8128 (American Arbitration Association - Final Hearing)
47. *Wooten v Conn Appliances, Inc*., Case No.: 01-16-0003-5557 (American Arbitration Association – Final Hearing)
48. *SANDRA WEST AND HECTOR MEMBRENO v CALIFORNIA SERICE BUREAU*, Case No.: 4:16-cv-03124-YGR (N.D. Cal.)
49. *Summers v Conn Appliances*, Case No.: 01-16-0004-1183 (American Arbitration Association - Final Hearing)
50. *Sheena Raffin v Medicredit*, Case No.: 2:15-cv-04912-GHK (C.D. Cal)
51. *Verina Freeman and Valecea Diggs v Wilshire Commercial Capital*, Case No.: 2:15-cv-01428-WBS-AC (E.D. Cal)
52. *Tomeo v Citigroup*, Case No.: 1:13-cv-04046 (N.D. Ill)

53. *Douglas Jurist v Receivables Performance Management, LLC*, Case Number 1240022589 (JAMS ARBITRATION)
54. *April Turner v Credit One Bank, N.A*., Case No. 1440005239 (Arbitration Tribunals of JAMS - Final Hearing)
55. *Frederick Luster and Narval Mangal v Green Tree Serivicing. LLC*, Case No. 1:14-cv-01763-ELR (N.D. Georgia)
56. *Jonathan Greisen v Credit One Bank* (JAMS Arbitration)
57. *Isaac Saucedo v Credit One Bank* (JAMS Arbitration)
58. *Naomi Blocker v Credit One Bank* (JAMS Arbitration)
59. *Winston Edwards III v Credit One Bank*, Case No. 1260004354 (JAMS Arbitration)
60. *Timothy Levis Johnson v Credit One Bank* (JAMS Arbitraion)
61. *William Boden and Debra Boden v Credit One Bank*, Case Nos: 1220054604/1220054605 (JAMS Arbitration – Final Hearing)
62. *Rebecca Sanders v Credit One Bank*, Case No.: 01-17-0001-6599 (American Arbitration Association - Final Hearing

63. Donna Ace v. Credit One Bank (JAMS Arbitration)..
64. Lynette Alomar v. Credit One Bank (JAMS Arbitration)..
65. Tonya Anderson v. Credit One Bank (JAMS Arbitration)..
66. Gregory Andrews v. Credit One Bank (JAMS Arbitration)..
67. Alyce Baker v. Credit One Bank (JAMS Arbitration)..
68. Terry Bardwell v. Credit One Bank (JAMS Arbitration)..
69. Joshua Bare v. Credit One Bank (JAMS Arbitration)..
70. Lori Bason v. Credit One Bank (JAMS Arbitration)..
71. Christopher Batch v. Credit One (JAMS Arbitration)..
72. Tiffany Battle v. Credit One (JAMS Arbitration)..
73. Jean Bellingrodt v. Credit One Bank (JAMS Arbitration)..
74. Carolyn Bennett v. Credit One Bank (JAMS Arbitration)..
75. Shady Bennett v. Credit One Bank (JAMS Arbitration)..
76. Kelly Benson v. Credit One Bank (JAMS Arbitration)..
77. Dawn Berkey v. Credit One Bank (JAMS Arbitration)..
78. Sherry Best v. Credit One Bank (JAMS Arbitration)..
79. Daniel Blashack v. Credit One (JAMS Arbitration)..
80. Edith Blashack vs. Credit One (JAMS Arbitration)..
81. Takia Brandon v. Credit One (JAMS Arbitration)..
82. Jeffrey Brown v. Credit One Bank (JAMS Arbitration)..
83. Karen Brown v. Credit One (JAMS Arbitration)..
84. Rebecca Burt v. Credit One Bank (JAMS Arbitration)..
85. Jennifer Burton v. Credit One Bank (JAMS Arbitration)..
86. Janice Bushey v. Credit One Bank (JAMS Arbitration)..
87. Matthew Byers v. Credit One Bank (JAMS Arbitration)..
88. Darrell Byrom v. Credit One Bank (JAMS Arbitration)..
89. Eric Carlstedt v. Credit One Bank (JAMS Arbitration)..
90. Ronald Carnes v. Credit One Bank (JAMS Arbitration)..
91. Michelle Carter v. Credit One Bank (JAMS Arbitration)..
92. Brandon Chapman v. Credit One Bank (JAMS Arbitration)..
93. Derek Chism v. Credit One Bank (JAMS Arbitration)..
94. Bernard Combs v. Credit One Bank (JAMS Arbitration)..
95. Linda Cooper v. Credit One Bank (JAMS Arbitration)..

96. Janice Crenshaw v. Credit One Bank (JAMS Arbitration)..
97. Christopher Crisona v. Credit One Bank (JAMS Arbitration)..
98. Brent Crompton v. Credit One Bank (JAMS Arbitration)..
99. Teresa Cruz v. Credit One Bank (JAMS Arbitration)..
100. Lisa Currey v. Credit One Bank (JAMS Arbitration)..
101. Kenneth Curtis v. Credit One Bank (JAMS Arbitration)..
102. Melissa Damron v. Credit One Bank (JAMS Arbitration)..
103. Mike Dane v. Credit One Bank (JAMS Arbitration)..
104. Ayanna Davis v. Credit One Bank (JAMS Arbitration)..
105. Bruce Davis v. Credit One Bank (JAMS Arbitration)..
106. Matthew Day v. Credit One Bank (JAMS Arbitration)..
107. Angela Deal v. Credit One Bank (JAMS Arbitration)..
108. Bettina Deleon v. Credit One Bank (JAMS Arbitration)..
109. Nathaniel and Rowena Depano v. Credit One Bank (JAMS Arbitration)..
110. Melissa Dibenedetto v. Credit One (JAMS Arbitration)..
111. Juan Dillon v. Credit One Bank (JAMS Arbitration)..
112. Sarah Peacock v. Credit One Bank (JAMS Arbitration)..
113. Kristina Dorffer v. Credit One Bank(JAMS Arbitration)..
114. Michael Dorsey v. Credit One Bank (JAMS Arbitration)..
115. Dacia Drury v. Credit One Bank (JAMS Arbitration)..
116. Kelly Dubel v. Credit One Bank (JAMS Arbitration)..
117. Winston Edwards III v. Credit One Bank (JAMS Arbitration)..
118. Kristi Evans v. Credit One Bank (JAMS Arbitration)..
119. Herby Fequiere v. Credit One Bank (JAMS Arbitration)..
120. Patrick Fitch v. Credit One Bank (JAMS Arbitration)..
121. Sharon Flowers v. Credit One Bank (JAMS Arbitration)..
122. Michelle Fong v. Credit One Bank (JAMS Arbitration)..
123. Joy Williams Frazier v. Credit One Bank (JAMS Arbitration)..
124. Carol Galanos v. Credit One Bank (JAMS Arbitration)..
125. Lizette Garcia v. Credit One Bank (JAMS Arbitration)..
126. Olivia Garcia v. Credit One Bank (JAMS Arbitration)..
127. Corey Gill v. Credit One Bank (JAMS Arbitration)..
128. Amy Goetting v. Credit One Bank (JAMS Arbitration)..
129. Angel Gomez v. Credit One Bank (JAMS Arbitration)..
130. Derik Gonzalez v. Credit One Bank (JAMS Arbitration)..
131. Moises Govea v. Credit One Bank (JAMS Arbitration)..
132. Tonya Greer v. Credit One Bank (JAMS Arbitration)..
133. Melissa Grose v. Credit One Bank (JAMS Arbitration)..
134. Laurie Guerrattaz v. Credit One Bank (JAMS Arbitration)..
135. Scott Guntle v. Credit One Bank (JAMS Arbitration)..
136. Arlinda Hairston v. Credit One Bank (JAMS Arbitration)..
137. Bartley Harper v. Credit One Bank (JAMS Arbitration)..
138. Terrance Harris v. Credit One Bank (JAMS Arbitration)..
139. Cindy Hawkins v. Credit One Bank (JAMS Arbitration)..
140. Daniel Hawkins v. Credit One Bank (JAMS Arbitration)..
141. Tara Hicks v. Credit One Bank (JAMS Arbitration)..
142. Theresa Hill v. Credit One Bank (JAMS Arbitration)..
143. Troy and Tammy Hill v. Credit One Bank (JAMS Arbitration)..
144. Gary and Angela Hlavacek v. Credit One Bank (JAMS Arbitration)..

145. Virginia Hubbell v. Credit One Bank (JAMS Arbitration)..
146. Ashley Jackson v. Credit One Bank(JAMS Arbitration)..
147. Joseph James v. Credit One Bank (JAMS Arbitration)..
148. Donald Johnson v. Credit One Bank (JAMS Arbitration)..
149. Janet Johnson v. Credit One Bank (JAMS Arbitration)..
150. John Johnson v. Credit One Bank (JAMS Arbitration)..
151. Sonya Johnson v. Credit One Bank (JAMS Arbitration)..
152. Stephanie Johnson v. Credit One Bank (JAMS Arbitration)..
153. Kenneth Jones v. Credit One Bank (JAMS Arbitration)..
154. Michael and Marianne Jordan v. Credit One Bank (JAMS Arbitration)..
155. Robert Ketterman v. Credit One Bank (JAMS Arbitration)..
156. Leila Kier v. Credit One Bank (JAMS Arbitration)..
157. Samantha King v. Credit One Bank (JAMS Arbitration)..
158. Jessica Kirksey v. Credit One Bank (JAMS Arbitration)..
159. Angelica Korchmaros v. Credit One Bank (JAMS Arbitration)..
160. Yaroslav Kut v. Credit One Bank (JAMS Arbitration)..
161. Brad Larsen v. Credit One Bank (JAMS Arbitration)..
162. Sarah Lawhead v. Credit One Bank (JAMS Arbitration)..
163. Gary Lawrence v. Credit One Bank (JAMS Arbitration)..
164. Timothy Levis Johnson v. Credit One Bank (JAMS Arbitration)..
165. Kemisha Levy v. Credit One Bank (JAMS Arbitration)..
166. Benjamin Lewis v. Credit One Bank (JAMS Arbitration)..
167. Jackie Likovic v. Credit One Bank (JAMS Arbitration)..
168. Lorenzo Lockwood v. Credit One Bank (JAMS Arbitration)..
169. Cathy Loreto v. Credit One Bank (JAMS Arbitration)..
170. Dawn Lowery v. Credit One Bank (JAMS Arbitration)..
171. Issac Lowery v. Credit One Bank (JAMS Arbitration)..
172. Leslie Malina v. Credit One Bank (JAMS Arbitration)..
173. Torre Mason v. Credit One Bank (JAMS Arbitration)..
174. Michael McDevitt v. Credit One Bank (JAMS Arbitration)..
175. Maya Christian McKeever v. Credit One Bank (JAMS Arbitration)..
176. Linda McNeal v. Credit One Bank (JAMS Arbitration)..
177. Amanda McNeill v. Credit One Bank (JAMS Arbitration)..
178. James McPartland v. Credit One Bank (JAMS Arbitration)..
179. Janice Metzger v. Credit One Bank(JAMS Arbitration)..
180. Dawn and Anthony Mighaccio v. Credit One Bank (JAMS Arbitration)..
181. Adriane Miles v. Credit One Bank (JAMS Arbitration)..
182. Keith Miller v. Credit One Bank (JAMS Arbitration)..
183. Dixie Dawn Moore v. Credit One Bank (JAMS Arbitration)..
184. Sabrina Moore v. Credit One Bank (JAMS Arbitration)..
185. Estefany Morel v. Credit One Bank (JAMS Arbitration)..
186. Juan Moreno v. Credit One Bank (JAMS Arbitration)..
187. Michelle Morgan v. Credit One Bank (JAMS Arbitration)..
188. Darlene Morrison v. Credit One Bank (JAMS Arbitration)..
189. Bobbie Murray and Random Booth v. Credit One Bank (JAMS Arbitration)..
190. Charlene Myers v. Credit One Bank (JAMS Arbitration)..
191. Denise Myers v. Credit One Bank (JAMS Arbitration)..
192. Rebecca Naylor v. Credit One Bank (JAMS Arbitration)..
193. Sharon Neville v. Credit One Bank (JAMS Arbitration)..

194. Jessanna Nunnery (Mitchell) v. Credit One Bank (JAMS Arbitration)..
195. Anthony Ogline v. Credit One Bank, N.A. and Midland Funding, LLC (JAMS Arbitration)..
196. Agnes Ousley v. Credit One Bank (JAMS Arbitration)..
197. Kaitlyn Peace v. Credit One Bank (JAMS Arbitration)..
198. Thomas Piner v. Credit One Bank (JAMS Arbitration)..
199. Melissa Prieto v. Credit One Bank (JAMS Arbitration)..
200. Heather Pyle v. Credit One Bank (JAMS Arbitration)..
201. Nathan Quick v. Credit One Bank (JAMS Arbitration)..
202. Nikola Radojkovic v. Credit One Bank (JAMS Arbitration)..
203. Jessica Rainey v. Credit One Bank (JAMS Arbitration)..
204. Tyrone Randolph v. Credit One Bank (JAMS Arbitration)..
205. Derek Reid v. Credit One Bank (JAMS Arbitration)..
206. John Reyes v. Credit One Bank (JAMS Arbitration)..
207. Rich Richardson v. Credit One Bank (JAMS Arbitration)..
208. Deborah Ristoff v. Credit One Bank (JAMS Arbitration)..
209. David Robertson v. Credit One Bank (JAMS Arbitration)..
210. Heather Robertson v. Credit One Bank (JAMS Arbitration)..
211. Ryan Romero v. Credit One Bank (JAMS Arbitration)..
212. Kathy Rupp v. Credit One Bank (JAMS Arbitration)..
213. Camilla Sammons v. Credit One Bank (JAMS Arbitration)..
214. Paul Schaferling v. Credit One Bank (JAMS Arbitration)..
215. Christopher Shirley v. Credit One Bank (JAMS Arbitration)..
216. Jerryd Shoda v. Credit One Bank (JAMS Arbitration)..
217. Martha Gabriela Silva Canales v. Credit One Bank (JAMS Arbitration)..
218. Jay Simon v. Credit One Bank (JAMS Arbitration)..
219. Melissa Simpson v. Credit One Bank (JAMS Arbitration)..
220. Delisa Sims v. Credit One Bank (JAMS Arbitration)..
221. Gween Sims v. Credit One Bank (JAMS Arbitration)..
222. Bridgette Fretz v. Credit One Bank (JAMS Arbitration)..
223. Christine Sokoloski v. Credit One Bank (JAMS Arbitration)..
224. Kyle Sorensen v. Credit One Bank (JAMS Arbitration)..
225. Paula Spivey v. Credit One Bank (JAMS Arbitration)..
226. Joshua Stack v. Credit One Bank (JAMS Arbitration)..
227. Anturuan Stallworth v. Credit One Bank (JAMS Arbitration)..
228. Rebecca Stanley v. Credit One Bank (JAMS Arbitration)..
229. Alisha Stewart v. Credit One Bank (JAMS Arbitration)..
230. Helen Stuber v. Credit One Bank (JAMS Arbitration)..
231. Pamela Swanson v. Credit One Bank (JAMS Arbitration)..
232. Shannon Taylor v. Credit One Bank (JAMS Arbitration)..
233. Angie Teneyck v. Credit One Bank (JAMS Arbitration)..
234. Stephanie Thornton v. Credit One Bank (JAMS Arbitration)..
235. Connie Tolbert v. Credit One Bank (JAMS Arbitration)..
236. Tamara Tuggle v. Credit One Bank (JAMS Arbitration)..
237. Leo Underhill v. Credit One Bank (JAMS Arbitration)..
238. Megan Veraldi v. Credit One Bank (JAMS Arbitration)..
239. Samantha Walters v. Credit One Bank (JAMS Arbitration)..
240. Brenda Walton v. Credit One Bank (JAMS Arbitration)..
241. Thomas Watson v. Credit One Bank (JAMS Arbitration)..

242. Anita Welch v. Credit One Bank (JAMS Arbitration)..
243. Trisha West v. Credit One Bank (JAMS Arbitration)..
244. Jill Williams v. Credit One Bank (JAMS Arbitration)..
245. Marie Wills v. Credit One Bank (JAMS Arbitration)..
246. Joy Wilson v. Credit One Bank (JAMS Arbitration)..
247. Christy Wineinger v. Credit One Bank (JAMS Arbitration)..
248. Sean Woodburn v. Credit One Bank (JAMS Arbitration)..

249. *Michelle Robertson v Navient Solutions, Inc*., Case No.: 8:17-cv-01077-RAL-MAP (M.D. Flordia Tampa)
250. *Cynthia Davis v Conn Appliances*, Case No.: 01-0000-9774 (American Arbitration Association)
251. *Tonya Erin Stevens v Conn Appliances*, Inc., Case No. 01-16-0003-2324, (American Arbitration Association)
252. *Aaron Manopla and Evelyn Manopla v Home Depot USA, Inc,* Case No.: 3:15-cv-01120-PGS-TJB (District of New Jersey)
253. *Laticia Lewis v Ocwen Loan Serivicing, LLC*, Case No.: 17-cv-01104-WJM-KHR (D. Colo)
254. *Mirella Covarrubias v Ocwen Loan Serivcing, LLC*, Case No.: 5:17-cv-00904-FMO-SP (C.D. Cal)..
255. *Gregory Franklin v Ocwen Loan Servicing, LLC*, Case No.: 3:17-CV-02702-JST (N.D. Cal)..
256. *Richard Quinones v Ocwen Loan Seriving, LLC*, Case No.: 2:17-cv-03526-DDP-FFM (C.D. Cal)..
257. *Susan Embree v Ocwen Loan Servicing, LLC*, Case No.: 2:17-CV-00156-JLQ (E.D. Wash)..

258. *John Herrick v Godaddy.com, LLC*, Case No.: 2:16-cv-00254-DJH (D. Az)
259. *Teresa Caserez v Credit One Bank, N.A.*, Case No.: 140003908 (JAMS Final hearing)
260. *Johnnie Williams, Jr. v Conn Appliances, Inc., Case* No.: 01-17-0001-5149 (American Arbitration Association - Final Hearing)
261. *Steve Bartolone and Karen Bartolone v OCWEN LOAN SERVICING, LLC*, Case No.: 8:17-cv-00821-JLS-JDE (C.D. Cal)
262. *James Hunter v Navient Solutions, LLC,* Case No.: 1460004086 (JAMS ARBITRATION)
263. Edith Wright v Conn Appliances, Inc., Case No.: 01-17-0006-8865 (AMERICAN ARBITRATION ASSOCIATION)…
264. Brian Dennis v Conn Appliances, Inc., Case No.: 01-17-0006-3428 (AMERICAN ARBITRATION ASSOCIATION)…
265. Wavely Jacobs v Conn Appliances, Inc., Case No.: 01-17-0006-1673 (AMERICAN ARBITRATION ASSOCIATION)…
266. *Lilly, Catherine v Citigroup Inc. d/b/a Citi*, Case No.: 01-0001-9107 (AMERICAN ARBITRATION ASSOCIATION)
267. *Raul Vargas v Conn Appliances*, Case No.: 01-17-0000-4085 (American Arbitration Association)
268. *Lina Trivedi v Web Bank and Bluestem Brands, Inc. d/b/a Fingerhut*, Case No.: 01-18-0000-2860 (American Arbitration Association - Final Hearing)
269. *Sara Diaz-Lebel v TD Bank USA, N.A.; and Target Corporation*, Case No.: 0:17-cv-05110-MJD-BRT (D.Minn)

270. *Karl Critchlow v Sterling Jewelers Inc. d/b/a Jared Galleria of Jewelers, Inc.,* Case No.: 8:18-cv-00096-JSM-JSS (M.D. Flor Tampa Division)
271. *Latonja Anderson v Credit One Bank,* Case No. 1440005234 (JAMS Arbitration – final hearing)
272. *Sandra Harris v Credit One Bank, N.A.,* Case No.: 144005582 (JAMS Arbitration - Final Hearing)
273. *Deborah Clark v FDS Bank and Department Stores National Bank*, Case No.: 6:17-cv-00692-CEM-TBS (M.D. Flor - Evidentiary Hearing)
274. *Shanica Spencer v Conn Appliances, Inc*., Case No.: 01-17-0007-5670 (American Arbitration Association)
275. *Thomason Max v Conn Appliances, Inc*., Case No.: 01-18-0001-9880 (American Arbitration Association – final hearing)
276. *Harold Allen v First National Bank of Omaha*, Case No.: 3:18-CV-1216-RDM (M.D. Penn)
277. *DEBRA WOMACK v CREDIT ONE BANK, N.A.*, Case No.: 1260004369 (JAMS Arbitration – Final Hearing)
278. *Nancy Carlin v Navient Solutions, LLC*, Case No.: 1:19-cv-00491-LMB-TCB (E.D. Virginia)
279. *Adam Lieberman v Credit One Bank*, Case No. 1425025196 (JAMS ARBITRATION - Final Hearing)
280. *Karen Saunders v Dyck O'Neal, Inc*., Case No.: 1:17-cv-00335 (W.D. Mich Southern Division)
281. *Benjamin Tarshish v Comcast Corporation*, Case No.: 01-19-0000-0815 (American Arbitration Association - Final Hearing)
282. *Aaron Williams v Pillpack, LLC*, Case No.: 3:19-cv-05282-RBL (W.D. Wash)
283. *Michael Mendell v American Medical Response, Inc*., Case No.: 3:19-cv-01227-BAS-KSC (S.D. Cal)
284. *April Parchman v SLM Corporation, Navient Corporation, Navient Solutions Inc. f/k/a Sallie Mae Inc., and Sallie Mae Bank*, Case No.: 2:15-cv-02819-JTF-cgc (W.D. Tenn Western Division)
285. *Marcell Hernandez and Wayne Wollertz v Conn Applicance, Inc*., Case No.: 01-19-0002-0468 (American Arbitration Association)

## 2020-Present Director of Administration and Information Technology
### All Hands Brewing Company, LLC
- Setting Administrative and IT budgets
- Establishing, administering, and securing computer and network systems.
- Install and administer and all software including PoS, HR, Payroll.
- Establishing, administering, and securing all web services inluding mail services and web services.
- Establishing and maintaining the security system.
- Setting up and maintaining audiovisual equipment, including televisions and music system.
- Build, install, and administer VoIP PBX phone system.

## 2013-Present  Founder
### Hansen Legal Technologies, Inc., San Diego, CA
- Established and incorporated Hansen Legal Technologies, Inc. in 2013
- Developed operating procedures for computer forensic examinations.

- Developed proper protocols in preserving electronic evidence and following chain of custody.
- Provided Forensic services for clients for class action, civil, and other consumer cases.
- Oversee all discovery phase of cases.
- Assist counsel in interrogatories, depositions, and meet and confer meetings.
- Participated in Meet and Confer, 26f conferences and misc pre-trial meetings.
- Assisted counsel in developing litigation strategies in cases
- Assisted counsel in preparing discovery including interrogatories and document requests
- Assisted counsel in evaluating responses to interrogatories and document requests
- Assisted counsel in witness examination in depositions.
- Prepaired declarations for Class Certifications, and for Motions for Summary Judgement.

**2007-2013    Co-Founder**
**Hansen and Levey Forensics, Ft Lauderdale, FL**
- Established and incorporated Hansen & Levey Forensics, Inc. in 2007
- Established secure forensics laboratory for the San Diego office.
- Developed operating procedures for computer forensic examinations.
- Developed proper protocols in preserving electronic evidence and following chain of custody.
- Provided Forensic services for clients for class action, employment, civil, domestic, and juvenile cases.
- Oversee all discovery phase of cases.
- Assist counsel in interrogatories, depositions, and meet and confer meetings, and preparation for sanction hearings against opposing counsel and parties.
- Participated in Meet and Confer, 26f conferences and misc pre-trial meetings.
- Assisted counsel in developing litigation strategies in cases
- Assisted counsel in preparing discovery including interrogatories and document requests
- Assisted counsel in evaluating responses to interrogatories and document requests
- Assisted counsel in witness examination in depositions
- Performed on site acquisitions.
- Participated in mediation sessions.
- Provided Expert Testimony in Craig Casey vs. Valley Center Insurance Agency Inc.

**2000-2016    Owner**
**Pns724 San Diego, CA**
- Provided complete IT solutions for hundreds of businesses and individuals including network design, configuration, forensics, and data recovery.
- Set up and maintained 864 line outbound call center with numerous auto dialers and predictive dialers.  Maintained call lists, and DNC lists used to place hundreds of millions of calls over a five year period.
- Installed hundreds of POTS lines, "Turned up" at least 38 T1's and PRI's.
- Investigated numerous network security breaches for various business.
- Implemented secure network solutions for medical practices to balance accessibility with HIPAA regulations.

**2006    Volunteer**
**San Diego Regional Computer Forensics Laboratory (FBI sponsored computer forensics Lab)**
- Built several forensic machines with large fiber channel RAID assemblies for use in the field.

- Installed and configured systems for mobile laboratory
- Provided support in all areas from taking in evidence to calling case agents to pick up their evidence from finished cases gaining valuable experience in evidence handling.

**2004-Present  Systems Analyst**
  **Amsec San Diego, CA / Lateott Bremerton, WA / HP Enterprise Services / DXC Technologies / Perspecta**
- Provided ATM and Ethernet fiber connectivity for secure and unsecured DOD networks.
- Troubleshot fiber connectivity issues on shore and ship facilities.

**2000-2004      Director of Training/ IT Director**
  **Laptop Training Solutions, San Diego, CA**
- Provided Intrusion detection, incident response, and forensic services in a continuing effort keep the network and workstations secure.
- Planned, designed, and implemented network security for vital network services for 4 facilities, that were heavily attacked by varying methods, saving the company hundreds of thousands of dollars.
- Performed security risk assessment, performed IT control audits, developed countermeasures and provided a security policy to insure confidentiality, integrity and availability of resources.
- Performed Gap Analysis of existing systems and desired systems and migrated from Windows 2000 DNS and Exchange 2000 servers to Linux servers running Postfix and BIND to provide a more scalable network for 4 facilities providing the company the means to achieve a 450% growth.
- Planned, installed and maintained several school networks involving numerous Domain Controllers, UNIX servers, print servers, multiple nodes and routers.
- Installed and programmed Nortel phone system improving the company's ability to handle calls.
- Planned, organized and instructed computer certification courses including Microsoft Certified Systems Engineer (NT4.0, Win2000 MCSE, 2003 MCSE), Cisco (CCNA), A+, N+, Linux+, I-Net+, Security+, MOUS and  Web Page Design (HTML, Javascript, DHTML, Flash 4, Flash 5, Fireworks3, Photoshop 5) resulting in hundreds of certified students.
- Provided students with a hands on training environment involving networks with  Multiple Windows NT and Windows 2000 Domain Controllers, several workstations (Windows 95,98,NT,ME, and 2000 Professional), Novell, Unix, and Exchange Servers, and Cisco routers.
- Planned, organized and instructed a corporate training environment for TCP/IP which included addressing, standards, troubleshooting, subnetting, routing and Frame Relay
- Provided long distance support via telephone to hundreds of MCSE students throughout the country.
- Managed other instructors on training techniques for the MCSE, CCNA, Linux+, A+, Security+ and Network + courses providing a consistent system of training in all facilities.

**1998-2000      Electronic Test Technician 3**
  **Action Instruments, San Diego, CA**
- Tested various types of electronics for industry and signal conditioning.
- Troubleshot and documented nearly 10,000 component level repairs.
- Assisted in improvements to the manufacturing process.
- Identified problems in product design and provided solutions to correct the problems.

**1996-1997       Network, Computer and Computer Monitor Technician /Instructor**
**United States Navy, Shore Intermediate Maintenance Activity, San Diego, CA**
- Installed and connectorized fiber optic computer networks throughout Naval Station San Diego and North Island.
- Provided network troubleshooting and management for large scale mission-critical DoD networks with over 600 nodes, routers, and servers.
- Provided upgrades, maintenance, troubleshooting, security, and repair of personal computers for 600 station LAN and the US Pacific Fleet.
- Troubleshot and repaired over 100 computer monitors to component level without technical manuals.
- Increased successful monitor repair from 10% to 95%.
- Trained shop personnel on computer monitor troubleshooting and repair.
- Researched parts, materials and techniques for Computer Monitor repair.
- Developed curriculum and instructed monitor troubleshooting and repair for the Navy Microcomputer Repair course.

**1993-1996       Electronics Technician / Computer Technician**
**United States Navy, USS Mahlon S. Tisdale (FFG-27), Combat Systems Division.**
- Provided incident response and performed forensic type of services for 36 computers following Employee sabotage.
- Troubleshot and maintained Harris 300 AN/UYK-62(V) mini-mainframe, running Vulcan OS, and all terminals
- Troubleshot, maintained, and upgraded hardware and software for 36 shipboard computers.
- Identified security threats, and developed countermeasures for computer systems on board.
- Troubleshot, repaired and maintained – at component level - various Univac systems making up a complex network of computers used in communications, navigation, and weapons guidance.
- Assisted in planning and running work center.

**1990-1992       Radio, Television, VCR Technician**
**LBJ Television, Wheat Ridge, CO**
- Performed component level troubleshooting of televisions, VCRs, and stereos.
- Performed in home repair of televisions.
- Introduced the repair of CD players to the company.
- Provided technical support to customers over the telephone.
- Handled customer service issues related to television repair.

**CERTIFICATIONS:**

Since starting my career, I have obtained certifications in MCP 4.0, A+, Network+, MCP 2000, MCSA, MCSE, Linux+, I-Net+, Security+, CIW Security Analyst.

I was certified by Bureau For Private Postsecondary And Vocational Education, in the States of California and Oregon, as an Instructor for Computer Installation and Repair Technology, Computer Systems Networking and Telecommunications, Micro Computer Applications, Microsoft, Windows, Excel in relation to my work at Laptop Training Solutions.

**GUEST APPEARANCES:**

- Featured in Microsoft Redmond Magazine Sep 2007
- Computer Talk 760 KFMB San Diego, CA
- Computer Bits KBNP 1410AM and KOHI 1600 Portland, OR
- San Diego Profiler 760 KFMB San Diego, CA

**PUBLIC POSITIONS:**

**June 2012-Jan 2017  Board Member, Spring Valley Community Planning Group**

      Elected board member of the Spring Valley Community Planning Group from April 2012 to Present. The purpose of the group is to advise the San Diego County Department of Planning and Land Use, the Planning Commission and the Board of Supervisors on matters of planning and land use affecting Spring Valley south of Highway 94. Members are volunteers and locally elected representing the interests of the people of Spring Valley. Items heard by the group include but are not limited to: Site Plans, Signs, Roads & Infrastructure, Parks & Recreation, Lot Splits, 2nd Dwelling Units, Day Care, Alcohol License, Tree Removal, Re-Zones.

**EDUCATION:**

2006   Access Data Forensic Toolkit
      San Diego Regional Computer Forensics Laboratory, San Diego, CA
2006   Guidance Software Encase Forensic Suite
      San Diego Regional Computer Forensics Laboratory, San Diego, CA
2005   E-discovery – Why Digital is different – by Craig Ball
      San Diego County Bar Association, San Diego, CA
2003   Security: Hardening MS Windows 2000 Server Family, IIS and Exchange 2000 Servers
      CBI Systems Integrators, San Diego, CA
1996   Navy Standard Microcomputer Repair
      PRC Inc., San Diego, CA
1996   Fundamentals of Total Quality Management/ Team Skills and Concepts
      Shore Intermediate Maintenance Activity, San Diego, CA
1993   AN/SPS-55 Surface Search Radar
      Service School Command, San Diego, CA
1993   Advanced Electronics School, Communication Systems and Radar Systems
      Naval Training Center, Great Lakes, IL
1992   Electronic Theory
      Naval Training Center, Orlando, FL
1990-1991    Radio, Television, VCR Repair
      Warren Occupational Technical Center, Golden, CO
1989-1990    Electronic Theory
      Warren Occupational Technical Center, Golden, CO
1991   Columbine Sr. High School, Littleton, CO

**SECURITY CLEARANCE:**  Secret

# EXHIBIT  B



**Media Contact:**
Mark Wigfield, (202) 418-0253
mark.wigfield@fcc.gov

**For Immediate Release**

## FCC ANNOUNCES SUCCESSFUL TRANSITION TO
## NEW ADMINISTRATOR FOR NUMBER PORTING SYSTEM

WASHINGTON, May 29, 2018—The Federal Communications Commission announced the successful completion of the transition to the new Local Number Portability Administrator (LNPA), Telcordia Technologies, doing business as iconectiv. The LNPA operates the system that allows consumers to keep their telephone numbers when they switch communications service providers, thereby promoting consumer choice and competition among those companies. It also provides critical services to our nation's law enforcement and public safety communities.

"I'm pleased that, after years of hard work and extensive preparation, we have successfully transitioned to a new and less expensive LNPA," said FCC Chairman Ajit Pai. "This change should reduce costs for consumers. I applaud the work of all involved in this complex endeavor, especially the dedicated staff in the FCC's Wireline Competition Bureau, Public Safety and Homeland Security Bureau, and Office of General Counsel. I thank them for working tirelessly to ensure a seamless and on-time transition for the communications industry, the law enforcement and public safety communities, and most importantly, the American public."

The FCC plays an important oversight role in administering telephone numbers, including overseeing the LNPA. For nearly a decade, the Commission worked closely with representatives of the North American Numbering Council (NANC) and the North American Portability Management LLC (NAPM) to rebid the LNPA contract and ensure a smooth transition to the new vendor that was selected.

Wireline Competition Bureau Chief Kris Monteith added, "Putting a new LNPA in place was truly a team effort on the part of FCC staff from all over the agency, as well as members of the NANC and the NAPM. This was a lengthy and challenging, but ultimately very successful, process."

###

**Office of Media Relations: (202) 418-0500**
**ASL Videophone: (844) 432-2275**
**TTY: (888) 835-5322**
**Twitter: @FCC**
**www.fcc.gov/media-relations**

*This is an unofficial announcement of Commission action. Release of the full text of a Commission order constitutes official action. See MCI v. FCC, 515 F.2d 385 (D.C. Cir. 1974).*

# EXHIBIT  C

https://www.ims-dm.com/mvc/index.php



The Most Innovative Solutions
in Do Not Contact List Management & Compliance.

**INTERACTIVE MARKETING SOLUTIONS, Inc.**

Interactive Marketing Solutions was organized in 2001 as a partner of the Direct Marketing Association to manage and distribute its Suite of Consumer Preference Services. It has

https://www.ims-dm.com/mvc/index.php

https://www.ims-dm.com/mvc/index.php

evolved into an independent company specializing in the development of innovative do not contact list and database management software and services designed to help businesses comply with state and federal legislation. Save money by not contacting consumers who do not want to be contacted.

Our popular 'Do Not Contact' Lists and Software will ensure that you are in compliance AND that you save money.

**Some of our most popular Suppression and Data Hygiene products are listed below, but please see the menu items above for a complete list of products and services. And, please feel free to 'Contact Us' for a personalized answer to your question.**

### Wireless Identification (TCPA) Solutions

Interactive Marketing Solutions is the country's largest single-source supplier of Wireless Identification Products. We serve marketers, collection agencies and other organizations with the need of identifying and segregating calls to wireless devices. In 2002, as a subsidiary of the Direct Marketing Association, IMS pioneered the concept of identifying wireless telephone numbers by introducing our proprietary Wireless Block Identifier® which can identify over 95% of the cell phone numbers currently in use. The remaining telephone numbers will be identified by the Neustar Ported Numbers files which we enhance with the date of the inital porting and resell in our role as their largest reseller. Since its introduction, we have sold thousands of subscriptions to our wireless products (see the IMS Customer List above.)

If you're a marketer, telephone marketing services bureau, debt collection firm, or other business concerned with calling wireless devices IMS offers a number of solutions for you. All of them revolve around the IMS Wireless Block Identifier® and the Ported Number files, which together identify all wireless devices, ensuring that you stay in compliance with federal and state legislation, and save time and money.

1. Both the **Wireless Block Identifier®** and **Ported Number (with our value added audit file)** files are needed to identify wireless telephones and are available for businesses to include in their suppression systems.

2. Our **VoIP Block Identifier** contains native VoIP telephone numbers and is available to include in your suppression system.

3. Our **SmartClean Service** lets you upload your file to our web server and have us clean your list and return them to you within minutes using the latest wireless identification databases updated daily. No technical experience required.

4. **EasyId**, simple, easy to use software with its integrated wireless database puts the control in your hands and lets you remove wireless numbers from lists right at your desk.

### Do Not Contact Mailing Solutions

We offer a number of solutions for consumer mailers such as non-profit organizations, catalogers, manufacturers, etc. that do not want to contact unresponsive consumers. It saves money, reduces complaints about unwanted mail and helps to prevent government Do-Not-Mail legislation.

1. Our **Recently Recorded Deceased** and **Deceased do not Contact** files have over 12 million consumer names and addresses

2. The **State and Federal Prison file** contains over 2,200 correctional facilities

https://www.ims-dm.com/mvc/index.php

https://www.ims-dm.com/mvc/index.php

3. **SmartClean** lets us scrub your lists while you concentrate on the marketing campaign.

4. We distribute the **DMA's DMAchoice** file which contains consumers who want to manage receipt of promotional offers.

**Telemarketing Solutions**

We distribute the official Do Not Call Lists for the following states as well as DMA's proprietary Do Not Call List.

1. The **Commonwealth of Pennsylvania's** Do Not Call List is Distributed Quarterly

2. The **State of Wyoming's** Official Do Not Call List is Distributed Quarterly

3. The **DMA's Telephone Preference Service** file contains both the PA and WY Do Not Call Lists as well as DMA registered Deceased individuals and is available for distribution monthly or quarterly

© 2014 Interactive Marketing Solutions, 777 Summer Street, Suite 502, Stamford, CT 06901       Privacy Policy

Telephone (203) 653-2762 - Fax (203) 653-2767 - email solutions@ims-dm.com

https://www.ims-dm.com/mvc/index.php

# EXHIBIT  D

https://www.ims-dm.com/mvc/page/about-us/

**I**nteractive **M**arketing **S**olutions

**TELEPHONE SOLUTIONS**     **MAILING SOLUTIONS**

**EMAIL SOLUTIONS**

Currently logged in (logout)

Home > About IMS

About IMS
Forms
Sample Files
IMS Customer List
Customer Sign-in
Support
Contact Us



# Learn More About IMS and Frank Rigano

Interactive Marketing Solutions, a member of the Direct Marketing Association and ACA International, is committed to developing innovative list and database management software and services designed to help businesses succeed in their collection and marketing efforts by mitigating the challenges imposed by privacy and consumer opt-out legislation.

Interactive Marketing Solutions was organized in 2001 in partnership with the Direct Marketing Association, to help direct marketers comply with privacy regulations related to calls to wireless telephones and the requests of consumers who do not want to receive unsolicited marketing material via mail, e-mail, and/or telephone. IMS manages for The DMA the world's largest private consumer preference database of nearly 15,000,000 consumers. Additionally, as the administrator for the DMA's Preference Services, IMS manages the "do not call" list for Pennsylvania and Wyoming. Included in the management services IMS provides is the distribution of consumer preference information to DMA members, direct marketers, and direct marketing service organizations for the purpose of removing individuals from prospect lists in accordance with state laws and/or DMA membership guidelines.

IMS has expanded its product offerings from the distribution of opt-out information to include:

- a variety of Wireless Idenfification products and services tailored to the needs and size of its customers;
- 'Online cleaning of lists (SmartClean) for mailers, credit and collection professionals, e-mailers, and telemarketers;
- Deceased lists desgned to aid marketers identify and suppress individuals from marketing materials;
- Prison list to assist marketers avoid unproductive mailings.

Through its relationship with The DMA and ACA International, IMS is in communication with various state and federal lawmakers for the express purpose of developing products to help direct marketers comply with current and pending legislation. For information, visit Interactive Marketing Solutions

https://www.ims-dm.com/mvc/page/about-us/

**Frank A. Rigano CEO, Interactive Marketing Solutions**

Frank Rigano has more than 20 years of experience providing marketing and technology solutions to business executives. He served as Executive Vice President of Operations and Administration for the Direct Marketing Association and Senior Vice President of Operations for the American Management Association.

Mr. Rigano has a strong foundation in the business impact of marketing and information technology and has led initiatives to build successful and profitable solutions by integrating the two disciplines. He offers astute assessment abilities and a powerful team that he has built from four core disciplines: strategy, technology, creativity and marketing. He encourages his team to look beyond conventional wisdom in strategy development and the implementation of business growth initiatives. He is a proven performer and hands-on executive with a strong focus on both business and technology issues.

Rigano holds an MBA in Information Science and a Bachelor of Professional Studies from Pace University in New York.

© 2014 Interactive Marketing Solutions, 777 Summer Street, Suite 502, Stamford, CT 06901        Privacy Policy

Telephone (203) 653-2762 - Fax (203) 653-2767 - email solutions@ims-dm.com

# EXHIBIT E

# IMS PARTIAL CUSTOMER LIST

| | | |
|---|---|---|
| 2222 Texoma Parkway | Automation Research, inc | Consumer Sales Solutions |
| A.M. Mailing Services, LLC | Banco Popular de Puerto Rico | Consumer Telcom Inc. |
| A1 Media USA LLC | Barclaycard US | Convergent Outsourcing |
| Access Direct | Bass Pro Shops | Convergys Customer Management Group, Inc |
| Acclaim Credit Technologies | Bay Area News Group | Corinthian Colleges, Inc. |
| Accounts Management Services | BBVA Compass | Cox Communications |
| Acculytic LLC | Berlin-Wheeler, Inc. | Credit Acceptance Corp. |
| Acquisition Technologies | Biehl  Biehl, Inc. | Credit Bureau Data Inc |
| Acxiom | Bisk Education Inc | Credit Bureau Jonesboro |
| AdBrilliant, LLC. | Blue Cross Blue Shield of Florida | Credit Control, LLC |
| Advantage Inc | Bluegreen Corporation | Cross Country Education |
| AFNI | Bolder Calls | CSB Systems |
| Agilone LLC | Branson Travel Enterprises | CSG, LLC. |
| Agora Marketing Solutions | Brazos Loan Servicing | CSS Direct |
| ALC | Brierley  Partners | Customer Contact Solutions, LLC |
| Allant Group | Bright House Networks | Customer Link |
| Allstate Insurance Company | Buxton | Daily Press |
| Alpat Company, Inc. | CAC Financial Corp | Daniel N. Gordon P.C. |
| Alsac St. Jude Children's Research Hospit | CACI | Data Targeting Inc |
| AMBA | California Recovery Bureau, Inc | DataLab USA |
| Americall Group, Inc. | Call Command | DataLogix Inc fka NextAction Corp |
| American Cancer Society | CallFire | DataMax Corporation |
| American City Business Journals | HealthCare Financial Services | Datamyx, LLC. |
| American Equity Mortgage | CanadaDirect | DBMG |
| American Express Travel related Services | Capital One Financial | DCS Inc. |
| American Family Mutual Insurance | Capital One NA | Democratic National Committee |
| American Home Shield | Carmel Financial Corporation, Inc. | DialAmerica Marketing, Inc. |
| American Institute for Cancer Research | CAS, Inc | Diamond Resorts International |
| American Republic Insurance Ct | Catalist, LLC | Dickmeyer  Company, Inc. |
| Americredit Financial Services, Inc | Cavalry Porftolio Services | Dig Dev, Inc. |
| Anchor Computer | Central Kentucky Management Services | Direct Marketing Association |
| ANI Networks | Central Telecom Long Distance | Direct Response Fundraising |
| Anthem Insurance Companies, Inc. | Chicago Tribune | Direxxis |
| AP Gas  Electric | Choice Point Precision Mktg. | Discover Financial Services |
| Apollo Group, Inc. | Circulation Development | Diversified Account Systems of GA |
| Aristotle International, Inc | Circulation Technicians | Diversified Adjustment Service Inc. |
| ARM Solutions Inc. | Citibank, N.A. | Diversified Consultants inc |
| ARS National Services | CMG | DM Services, Inc |
| ASLMarketing | CoastalCom | DMEautomotive,LLC |
| ASNY Reality, LLC | Collectcorp Inc. | DMRA, Inc |
| Aspen Media  Market Research | Collection Bureau of America | Do Not Call Compliance |
| Asset Recovery Group, Inc | Comcast Cable Communications Mgmt. | Doctors Reporting Services |
| Associated Bank | Compact Information Systems | Donor Services Group, Llc |
| Associated Community Services | Connect Point Research | Dovetail Business Solutions |
| ATT | Consolidated Travel Holdings Group, Inc | Dow Jones and Company |
| Auto Protection Alliance, LLC | Consumer Portfolio Services, Inc. | Duvera Financial |

Ebay Enterprise Marketing
Ebsco Teleservices
ECMC
ECMC Corporation
Edfinancial Services
Embarq Communications Inc
Emerald AR Systems, LLC
Encore Payment Systems
EnerBank USA
Enterprise Recovery Systems, Inc.
Epsilon Inc.
EpsilonVerizon
Equifax, Inc.
Escallate, LLC
EverBank
Evolve Discovery
Experian
Express Recovery Services Inc
Extended Data Solutions, Inc
Fair Isaac Corporation
FantaSea Resorts
FCC
FEDChex
FH Cann  Associates
Financial Asset Management Systems
Financial Corporation of America
Financial Health Strategies, Inc.
First American Payment Systems
First in Print
Firstsource Advantage, LLC
Flagship Resort Development Co
FLS Connect
FMS
Focus on the Family
Ford Motor Company
Frederick J. Hanna  Associates, PC
Fulcrum Analytics, Inc.
Full Circle Financial Services
Gallup, Inc.
Gannett
GC Services LP
General Service Bureau
Gerber Life Insurance Company
Glass Mountain Capital LLC
Globe Life  Accident.
Globe Life and Accident
Grand Crowne Resorts
GrayHair Software, Inc
Greystone Alliance
Guard Publishing Company

Gurstel Chargo PA
Harriet Carter Gifts
Harris Connect, llc
Harte Hanks
Harvard Collection Services, Inc
HBW Leads LLC
Healthcare Collections, LLC
Healthcare Outsourcing Network, LLC
Hilton Grand Vacations
Hi-Tech Solutions, Inc.
HomeServe USA
HSBC
Hyde  Swigart
i3 Group
I-Centrix
IDG Connect
Ignite Media Soutions
Imprezzio Inc
Incept Corp
Infinity Energy Solutions
InfoCision Management Corporation
InfoUSA
Infutor
Inka Solutions LLC
Instinctive Edge LLC
Integrated Marketing Solution
Intrawest Resort Ownership Corp
iPacesetters, LLC
ITM Marketing, Inc.
ITT Educational Services, Inc
J P Morgan Chase
Javelin Marketing Group
Jenkins, Wagnon  Young, P.C.
Jerold Kaplan Law Office, P.C.
Jigsaw
JNET Communications
K2 Marketing
Kendall Credit
KeyCorp
Kipany Productions
KnowledgeBase Mktg
Lancaster Newspapers
Landmark
Law Offices of Douglas J. Campion
law offices of Todd M Friedman
LCS Financial Services Corp
LifeScan, Inc
LifeTouch Church Directories
LiftEngineBlue Hill Marketing Solutions
Linebarger Goggan

List Services Corporation
LiveOps, Inc.
LiveVox
LJ Ross Associates
LLPS
LoanDepot
Lorillard Tobacco
LTD Financial Services, LP
Magellan Data and Mapping Strategies
Maritz Research
Marketing Plus Inc
Marketing Software Company
MCOA
Medical Recovery Specialist LLC
Melissa Data
Merchants Credit Adjusters, Inc.
Merkle Inc.
Message Broadcast.Com
MetLife
Metro News Service, Inc.
Meyer Associates
Miami Herald
MINACS
MM Beddings Inc
MMI Direct, LLC
Mocan Media, LLC
More Furniture For Less
Morgan  Morgan, P.A.
Mortgage Investors Corporation
Moss Law Firm PC
Motor Vehicle Solutions
MRS BPO, LLC.
MRSI
Multimedia Lists, Inc.
Mutual of Omaha Insurance
NARS
Nathan  and  Nathan
National Enterprise Systems
National Recoveries Inc
Nationwide Credit, Inc
Nationwide Marketing Services
NCO Financial Systems, Inc.
Nelson, Watson  Associates
New York Community Bank
Nordstrom
Northwest Financial
Northwest Mailing Service
NPAS Solutions
NRCCUA
NYC DEP

| | | |
|---|---|---|
| OLCGlobal. Inc | Sallie Mae | The Data Center |
| Omaha Steaks | San Francisco Chronicle | The Fidelis Group |
| Omnium Worldwide, Inc | SBC, Ltd. | The Hacker Group |
| OneTouch Direct, LLC | SchoolsFirst FCU | The Manhattan Club |
| OpenComm Services Corp | Sears Home Improvement | The MSR Group |
| ORC International | Sekure Card Services | The Oregonian Publishing Co |
| PA Higher Educ Assistance Agency | Senture, LLC | The Patriot News |
| Patriot Communications LLC | Seterus, Inc | The Pisa Group |
| Pawsitive Strides | Sierra Club | The Plain Dealer |
| PCC | Sigma Marketing Group | The Post Standard |
| Penn Credit Corporation | Silverleaf Resorts | The Printing Company |
| Philadelphia Media Network | Sirius XM | The Results Companies LLC |
| Pitney Bowes | SITEL Corporation | The Revenue Group |
| Plaza Recovery, Inc | Slomins, Inc | The Star Ledger |
| Pluris | SMS Marketing Services Inc. | ThinkSmart |
| PNC Bank | SolutionSet | Thomas L. Cardella  Associates |
| PossibleNOW | SoundBite Communications Inc. | Tiburon Financial |
| Post Secondary Education | Source Marketing | Time Warner Cable |
| Precision Dialogue Direct, Inc | Speak2Leads | Times Publishing Company |
| Primary Financial Services | Speedeon Data | TLO, LLC |
| Product Development Corporation | SPLICE Software | TNS |
| Professional Collection LLC | Sprint Nextel Corporation | Total Marketing Concepts |
| Professional Credit Management, Inc | SQM Group | TPG |
| Professional Recovery Consultants | SSI Group, Inc | Transfer Smart LLC |
| Progressive Data Services | Stamps.com | TRI Marketing |
| Prospect America Inc | Stephens  Michaels Associates, Inc. | Tribune Direct |
| Quality Resources | Sterling Jewelers Inc. | Trilegiant Corporation |
| Quality Resources, Inc | Stones Phones | TruGreen |
| R.L. Polk  Co. | Strategic Fulfillment Group | Turn-Key Solutions |
| Radius Global Solutions | Stratmark | UMB Bank, N.A.  Its Affiliates |
| RAINIER COLLECTION SERVICES | Strofina | United Health Care |
| RB Holding Company | Sun Times Media | United Online, Inc. |
| RDA Group | Sun Trust Bank | United Recovery Systems, LP |
| Reader's Digest Association | Sunrise Data Services | US Cellular |
| RealtyAQ, LLC | Sykes Acquisition, LLC | US Telcom Long Distance |
| Receivables Management Partners | Synergy Solutions Inc | USA TODAY |
| Receivables Outsourcing Inc | T.R.I. | USAA |
| Regency Communication | Talon Mailing  Marketing | Vantage Sourcing LLC |
| Reinbursement Tech | Target Corporation | Varolii Corporation |
| Relevate | TD Bank | Venture Financial Services |
| Reliance First Capital | Tea Leaves Health | Venture Solutions |
| Reliant Energy | Telecom, Inc. | Verizon Wireless |
| Remex, Inc. | Telepoint Communications,Inc. | VMBC |
| Republican National Committee | Telereach, Inc | VVN |
| Retail Merchants Association | Terminix International | VXI Global Solutions, LLC |
| Reynolds and Reynolds | The Affiliated Group | WarrantyExchangeUSA, LLC |
| RJ Boudreau  Associates | The Best Service Co. | Warrior Custom Golf, Inc. |
| Robodial.org, LLC | The Broadcast Team | Washington List |
| RPM Direct LLC | The CBE Group, Inc. | Wells Fargo and Company |
| RTI International | The CMI Group | Weltman, Weinberg  Reis Co. LPA |

West Business Services, L.P.
Western Dental Services
Westgate Resorts
Wiland Direct
Winning Strategies Marketing
Wipro Technologies
World Media Enterprises, Inc.
Worldata Inc.
Xerox Educational Services, Inc
Zenith Merchant Services
Zip Realty
Zwicker  Associates, PC

# EXHIBIT  F

https://www.ims-dm.com/mvc/page/wireless-block-identifier/



**TELEPHONE SOLUTIONS**   **MAILING SOLUTIONS**

**EMAIL SOLUTIONS**

Currently logged in (logout)

Home > Wireless Block Identifier®

About IMS
Forms
Sample Files
IMS Customer List
Customer Sign-in
Support
Contact Us



# Wireless Block Identifier® - Easy Identification of Cell Phone Numbers

There is no cell phone do not call list for telemarketers and collectors to work from. Still, Federal Regulations restrict organizations when making unsolicited marketing and collection calls to wireless numbers. Can you identify the cell phone numbers on your list?

For an accurate identification of cell phone numbers, **you must use the Wireless Block Identifier® File and the Wireless Ported Number File together**. IMS has been providing wireless identification products and services to Direct Marketers, Collection Agencies, Attorneys, and Telemarketers since 2002.

The Wireless Block Identifier® file identifies those Area codes and Exchanges or blocks of numbers assigned to wireless carriers active within the North American Numbering Plan in the U.S. and Canada. An updated file is made available twice monthly for download and covers over 700,000 blocks representing some 700 million plus phone numbers that are currently assigned or will be assigned to mobile phones.

Each record on the file contains 5 fields labeled:

- NPS (area code)
- NXX (exchange)
- X (1st digit of the remaining number - the block of 1,000 numbers)
- Category (wire = wireless, PCS = personal communication service, etc)
- Future Use (reserved for future use).

The first three fields contain a total of 7 digits that identifies a block of 1,000 telephone numbers assigned to a wireless carrier. These 7 digits, representing the area code, exchange and 1st position of the telephone number, must be matched to the first 7 digits of the prospects telephone number. A match indicates that the telephone number has been assigned to a wireless carrier.

A replacement Wireless Block Identification® file is created twice a month, zipped and placed on the web site about the 10th and 24th of each month. When the new file is posted, a

https://www.ims-dm.com/mvc/page/wireless-block-identifier/

notifying email is sent to all subscribers.

**How to use the Wireless Files**

**Wireless Block Identifier® Frequently Asked Questions**

**Sample WIRELESS BLOCK IDENTIFIER.txt**

**The price for a 12 month subscription to the Wireless Block Identifier® file is:**

- $2,750 for Service Organizations (If you clean lists belonging to others)
- $1,095 for End users (If you clean your own lists)


A single fine for illegally contacting a cell phone number is $11,000 according to the Telephone Consumer Protection Act.

**How to subscribe to the Wireless Block Identifier® File:**

- **Subscribe now**
- **Renew now**


Learn more about the Wireless Ported Numbers File which allows for the identification of numbers that have been assigned to landline carriers but have been ported (switched) to wireless carriers and visa-versa. To correctly identify a cell number, both the Wireless Ported Number and the Wireless Block Identifier® files should be used together.

© 2014 Interactive Marketing Solutions, 777 Summer Street, Suite 502, Stamford, CT 06901      Privacy Policy

Telephone (203) 653-2762 - Fax (203) 653-2767 - email solutions@ims-dm.com

# EXHIBIT  G

https://www.npac.com/number-portability/the-npac-neustar-lnp

Sign In | Contact Us | Feedback | Billing

**NPAC** Number Portability Administration Center

Search this site...

Home    Customer Center    The NPAC    **Number Portability**    LNPA Working Group    Resources

What is LNP?    How LNP Works    The NPAC, Neustar & LNP

Number Portability » The NPAC, Neustar & LNP

🖶 Print

# The NPAC, Neustar & LNP

The NPAC was implemented in 1997, making Local Number Portability ( LNP ) in the U.S. and Canada a reality. As mandated by various FCC and CRTC rules and orders, the Number Portability Administration Center (NPAC) is the telecom industry's common, authoritative database used for routing, rating and billing calls for telephone numbers that are no longer assigned to the original NPA-NXX code holder.

As the only NPAC Administrator for the U.S. and Canada, Neustar stays ahead of the rapidly changing telecommunications industry to deliver and maintain the LNP system. Working with industry members who compete with each other in various markets around the country, Neustar and the NPAC continue to work for the benefit of the entire communications industry.

## Responsibilities of the NPAC

The primary responsibilities of the NPAC include:

- **Data Administration**: Ported telephone number data administration, service provider network data administration and audit administration
- **Mass Changes**: Area code (NPA) splits and LRN transfers
- **Billing and Cost Apportionment** to determine the allocation of NPAC charges and then rendering approximately 11,000 invoices each month to collect those charges. The allocation applies to nearly all NPAC charges and is based on the relative end user telecommunications revenue of the billed parties.

Other NPAC responsibilities include:

- Interactive Voice Response (IVR) System : used by U.S. law enforcement agencies, public safety answering points providers to identify the current facilities-based service provider of ported and pooled telephone numbers
- Local Portability Enhanced Analytical Platform (LEAP) Service : used by U.S. law enforcement agencies and public answering point providers to identify the current facilities-based service provider of ported and pooled telephone numbers on a batch basis.
- Intermodal Ported Telephone Number Identification Service (a/k/a Wireless Do Not Call) : used by U.S. telemarketers to identify telephone numbers that have been ported from wireline to wireless service in order to avoid violations of laws and rules against auto-dialing telephone numbers.

## Neustar and the NPAC

The FCC determined that the NPAC should be administered by one or more neutral third parties. Neustar has been deemed a neutral third-party administrator with strict neutrality requirements in place for all employees, board members and contractors. Neustar's corporate-wide neutrality program is unmatched by any other entity in the market today.

As administrator of the NPAC, Neustar processes tens of millions of transactions every month, ensuring that the correct and most current service provider is associated with each ported telephone number. Virtually every call that terminates within North America relies upon the NPAC to be routed to completion.

## Highlights of Administrator History

- Implemented and deployed the world's first number portability database, the NPAC, in 1997
  - 500+ million numbers under management
  - 24/7/365 operations
  - Completely redundant system
  - Security, disaster recovery planning, reporting, auditing
  - +1.2M real-time broadcasts of adds, changes, deletions every day
  - Controlled access for law enforcement and public safety agencies
- Strict corporate-wide neutrality requirements in place
  - Neustar undergoes nine separate audits each year, including
    - Neutrality regulations and code of conduct
    - LNP neutrality
    - ISO 9001 certified
  - Neustar has passed all neutrality audits

https://www.npac.com/number-portability/the-npac-neustar-lnp

https://www.npac.com/number-portability/the-npac-neustar-lnp

- High quality, high performing, reliable, secure, scalable database; performs at 99.999% availability (vs. a target of 99.9%)
  - Eight major software releases and three platform upgrades
  - Designed for change to support the evolving needs of the communications industry
  - Modular infrastructure for capacity expansion without service interruption
  - Incremental carrier investment based on significant economies of scale
- High customer satisfaction ratings for 15 years
  - "Superior" NPAC Customer Survey rating at 3.68 out of 4.00 (92%)
  - "Superior" NAPM Customer Survey rating at 3.67 out of 4.00 (92%)
- Full leverage of the NPAC infrastructure to bring added value to Service Providers
  - Network/technology migration (e.g.: 2G->3G ->4G, LTE)
  - Network and switch load balancing
- Emergency Preparedness to provide direct assistance to affected carriers in times of natural or man-made emergency
  - New York City area on September 11, 2001 when critical infrastructure was damaged or destroyed
  - New Orleans and the Gulf Coast during Hurricane Katrina in 2005
- National Pooling to manage numbering resources
  - Instituted pooling in blocks of 1,000 vs. 10,000 blocks to better manage the finite inventory of available telephone numbers and NPA-NXX codes.
  - Preserved 500 million telephone numbers

Learn more about Neustar .

© Copyright 2015. Neustar. All Rights Reserved

Glossary  |  Site Map  |  Contact Us  |  Privacy Statement

https://www.npac.com/number-portability/the-npac-neustar-lnp