IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CATHERINE PALMER, individually and on behalf of all others similarly situated;<br><br>     **Plaintiff,**<br><br>vs.<br><br>KCI USA, INC.,<br><br>     **Defendant.** | 4:19CV3084<br><br>ORDER |

   This matter is before the Court on the Motion for Leave to File an Amended Class Action Complaint (Filing No. 44) filed by Plaintiff, Catherine Palmer, and on the Motion to Stay (Filing No. 46) filed by Defendant, KCI USA, Inc. For the following reasons, the Court will deny Palmer's motion for leave to amend and will grant KCI's motion to stay.

## BACKGROUND

   KCI is a licensed durable medical equipment provider and a wound care company providing prescription wound devices for medical patients within the United States. Palmer filed a putative class action complaint against KCI on August 19, 2019, alleging KCI violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA") by making calls to individuals believed to be KCI's debtors, including Palmer and other class members, using an "automatic telephone dialing system" ("ATDS") and/or an "artificial or prerecorded voice" without prior express consent. Palmer alleges between March and June 2019 she received seven autodialed calls on her cellular telephone from KCI. The caller left pre-recorded voicemails regarding an overdue medical account for a different individual. (Filing No. 1). Palmer was not a customer or debtor of KCI, but, due to the transposition of a digit in the telephone number, KCI made the calls to Palmer's cellular telephone rather than the intended individual. Palmer's complaint proposes the following class definition for a "wrong number" class:

> All persons and entities throughout the United States (1) to whom KCI USA, Inc. placed, or caused to be placed, a call directed to a number assigned to a cellular telephone service, but not assigned to the intended recipient of KCI USA, Inc.'s calls, (3) by using an automatic telephone dialing system or an artificial or prerecorded voice, (4) from four years prior to the date of this complaint through and including the date of class certification.

([Filing No. 1 at p. 9](#)).  Palmer, on behalf of herself and the class, seeks $500 in statutory damages for each call, as well as treble damages due to her allegation that some or all of KCI's telephone calls were made willfully and knowingly in violation of the TCPA.

In accordance with the deadline selected by the parties in their Rule 26(f) Report ([Filing No. 24](#)), the Court entered an order on November 13, 2019, setting various case progression deadlines, including January 15, 2020, as the deadline for parties to move to amend pleadings or add parties.  ([Filing No. 26](#)).  Plaintiff filed the instant motion for leave to amend on August 24, 2020, after the deadline expired.  Palmer alleges she learned during discovery that, "as a matter of pattern and practice," KCI "does not obtain prior express consent from consumers to whom it places calls by using an ATDS or an artificial or prerecorded voice" and instead "assumes" prior express consent exists.  ([Filing No. 44-3 at p. 15](#)).  Palmer contends that she first learned this information during a Rule 30(b)(6) deposition of KCI on July 29, 2020.  ([Filing No. 44 at p. 5](#)).  Specifically, KCI's designated deponent testified, "[W]e don't have direct consent from the patient.  It's assumed through the fact that a requester has ordered our product in order to help treat a patient.  Therefore, we would contact them for usage."  ([Filing No. 44-2 at p. 7](#)).  Based upon this testimony, Palmer seeks to file an amended complaint with two class definitions, including a similarly defined "wrong number" class as alleged in her original complaint, as well as a broader class Palmer calls a "Dialer and Prerecorded Voice Class," defined as:

> All persons and entities throughout the United States (1) to whom KCI USA, Inc. placed, or caused to be placed, a call directed to a number assigned to a cellular telephone service, (3) by using the Cisco Unified Contact Center Enterprise dialing system, or an artificial or prerecorded voice, (4) from August 19, 2015 through and including the date of class certification.

([Filing No. 44-4](#)).

In opposing Palmer's motion to amend, KCI asserts the facts underlying Palmer's request to amend were available to her much earlier than the Rule 30(b)(6) deposition.  In Palmer's written discovery requests, she had asked KCI to describe its "efforts to verify or confirm that telephone number [(xxx) xxx-7223] was assigned to the intended recipient of [KCI's] calls."  In KCI's answers to interrogatories provided to Palmer on February 10, 2020, KCI answered, "KCI's customer ordered a prescription medical device from KCI through the customer's healthcare provider, voluntarily providing the telephone number for communications regarding the prescription medical device."  ([Filing No. 45-1](#)).

KCI has also filed a motion to stay the case pending the Supreme Court of the United States' decision in *Facebook, Inc. v. Duguid*, No. 19-511, 2020 WL 3865252, at *1 (U.S. July 9, 2020), which will resolve a circuit split regarding whether the TCPA's definition of an ATDS encompasses any device that can "store" and "automatically dial" telephone numbers, even if the device does not "use a random or sequential number generator."  KCI used a Cisco Unified Contact Center Enterprise dialing system to make the phone calls to Palmer.  KCI asserts the *Facebook* ruling will conclusively resolve whether the equipment used by KCI is an ATDS within the meaning of the TCPA, which is an essential element of Palmer's individual claim and the claim of the putative class.

## ANALYSIS

### I.  Motion to Amend

When a party seeks leave to amend under Rule 15(a) of the Federal Rules of Civil Procedure outside of the time period established by a scheduling order, the party must first demonstrate good cause under Rule 16(b).  See *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008); *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008).  Palmer filed the instant motion for leave to amend on August 24, 2020, seven months after the motion to amend pleadings deadline had expired under the case progression order.  Therefore, Palmer must demonstrate good cause to amend her pleadings.  See *Sherman*, 532 F.3d at 716.

"The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements."  *Sherman*, 532 F.3d at 716 (citing *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006)).  "[I]f the reason for seeking the amendment is apparent before the deadline and no offsetting factors appear, the Rule 16 deadline must govern."  *Financial Holding Corp. v. Garnac Grain Co.*, 127 F.R.D. 165, 166 (W.D. Mo. 1989).  Although prejudice to the nonmovant resulting from modification of the scheduling order may be a relevant factor, the court will generally not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines.  See *Sherman*, 532 F.3d at 717 (citing *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001)).  "[T]he 'good cause' standard [of Rule 16(b)] is an exacting one, for it demands a demonstration that the existing schedule cannot be reasonably met despite the diligence of the party seeking the extension."  *Scheidecker v. Arvig Enters.*, 193 F.R.D. 630, 632 (D. Minn. 2000) (citation omitted).  Whether to grant a motion for leave to amend is within the sound discretion of the district court.  *Popoalii*, 512 F.3d at 497.

Palmer asserts good cause exists for her belated motion to amend because she did not learn the information supporting her proposed amendments until KCI's Rule 30(b)(6) deposition on July 29, 2020, wherein KCI's designated deponent testified, "[W]e don't have direct consent from the patient. It's assumed through the fact that a requester has ordered our product in order to help treat a patient. Therefore, we would contact them for usage." (Filing No. 44-2 at p. 7). Palmer contends that this is the first time she learned "as a matter of pattern and practice—for all of KCI's customers" that KCI does not obtain prior express consent directly from the intended recipient of its calls. (Filing No. 48 at p. 10). Palmer argues she has been diligent in pursuing this amendment because she first served KCI with written discovery requests seeking information regarding KCI's practices to obtain prior consent on October 28, 2019, and although KCI responded on February 10, 2020, directing her to see attached documents, it did not actually attach any responsive documents. (Filing No. 44 at p. 4).

The Court finds Palmer has not demonstrated she was diligent in attempting to meet the scheduling order's deadline to amend pleadings, which expired seven months before she filed the instant motion. First, although Palmer claims she did not learn the basis for her proposed amendments until the July 29, 2020, deposition, Palmer had facts in her possession as early as February 10, 2020, which, had she pursued them, would have supported her proposed amendments. In particular, on February 10, 2020, KCI answered that it obtained the telephone number [(xxx) xxx-7223] when KCI's customer ordered a prescription medical device through the customer's healthcare provider, "voluntarily providing the telephone number for communications regarding the prescription medical device." In other words, Palmer was informed in February 2020 that KCI obtained the 7223-telephone number from a healthcare provider as an intermediary, and not from intended recipient him or herself. True, this answer does not state that *all* of KCI's customer's telephone numbers are obtained from a healthcare provider rather than the customer/patient him or herself, but KCI's answer was enough to have prompted further investigation or inquiry had Palmer been diligent. Additionally, if Palmer believed KCI's responses to written discovery were insufficient in February 2020, Palmer could have, and should have, taken action to have KCI to remedy its deficient responses much earlier. Finally, KCI correctly points out that its non-lawyer, Rule 30(b)(6) deponent's testimony that "we don't have direct consent from the patient" is a legal conclusion; the court will determine whether KCI's practices constitutes express prior consent under the TCPA. See *S. Wine & Spirits of Am., Inc. v. Div. of Alcohol & Tobacco Control*, 731 F.3d 799, 811 (8th Cir. 2013)("A

30(b)(6) witness's legal conclusions are not binding on the party who designated him."). It bears repeating that KCI's designated deponent's testimony that "we don't have direct consent from the patient" was followed by her statement that, "[consent] is assumed through the fact that a requester has ordered our product in order to help treat a patient" – which is the same process KCI stated it used to obtain the 7223-telephone number in its February 2020 interrogatory answer. In other words, the factual basis for Palmer's proposed amendments was available to her several months before filing the instant motion. See *Financial Holding Corp.*, 127 F.R.D. at 166 ("[I]f the reason for seeking the amendment is apparent before the deadline and no offsetting factors appear, the Rule 16 deadline must govern."). Therefore, the Court finds Palmer has not demonstrated good cause justifying her long delay in seeking to amend her complaint.

Having concluded Palmer did not exercise due diligence to comply with the scheduling order, the Court does not need to address the remaining arguments regarding unfair prejudice and futility. See *Sherman*, 532 F.3d at 717 (finding the court generally will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines). Nevertheless, the Court also finds that permitting the belated amendment would be prejudicial to KCI. The deadlines to complete written discovery, expert disclosures, and depositions, have all concluded, and the parties are preparing for class action and dispositive motion practice on Palmer's original pleading containing only her "wrong number" individual claim and "wrong number" putative class. Permitting Palmer to amend her complaint at this late hour to convert this case from a "wrong number" action into an action that essentially includes all calls KCI has made to all its customers would be unfairly prejudicial. See *Popp Telcom v. Am. Sharecom, Inc.*, 210 F.3d 928, 943 (8th Cir. 2000) ("Where an amendment would likely result in the burdens of additional discovery and delay to the proceedings, a court usually does not abuse its discretion in denying leave to amend."). Therefore, under the circumstances, the Court will deny Palmer's motion for leave to amend.

## II. Motion to Stay

KCI moves the Court for an order staying all proceedings pending the decision of the Supreme Court in *Facebook, Inc. v. Duguid*, No. 19-511, wherein the court granted certiorari to resolve, "Whether the definition of ATDS in the TCPA encompasses any device that can 'store' and 'automatically dial' telephone numbers, even if the device does not 'us[e] a random or

sequential number generator.'" KCI argues this decision will determine a "crucial question" of law in this litigation.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248 (1936). A federal district court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681 (1997). In evaluating a stay, a court should consider several relevant factors, including "maintaining control of its docket, conserving judicial resources, and the important interest of providing for the just determination of cases pending before the court," *Rosales v. Heath*, No. 8:17CV87, 2017 WL 2533365, at *2 (D. Neb. June 9, 2017)(Zwart, M.J.), and the "possible damage, hardship and inequities to the parties to the lawsuit and the relationship of the stay to the fulfillment of judicial objectives of simplification of the issues in question and trial of the case." *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, No. 806CV458, 2007 WL 2344805, at *1 (D. Neb. Aug. 14, 2007)(Bataillon, J.)(quoting *United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 217 (D. Del. 1991)). A stay may be warranted where the matter implicates "rights which are inextricably tied to [a] pending . . . claim in [another court]." *Id.* (quoting *Kemp v. Tyson Seafood Grp., Inc.*, 19 F. Supp. 2d 961, 965 (D. Minn. 1998)). Typically, the applicant for a stay has the burden to show specific hardship or inequity if he or she is required to go forward. See *Landis*, 299 U.S. at 255.

In weighing the above factors, the Court finds that a stay of the case pending the *Facebook* decision is warranted. Palmer seeks to certify a class of persons who received ATDS calls or prerecorded calls from KCI as part of a singular class. Whether the Cisco Unified Contact Center Enterprise dialing system used by KCI to qualifies as an ATDS is an essential element of Palmer's claim under the TCPA and of the putative class's claim. See *Brenner v. Am. Educ. Servs.*, 702 F. App'x 503, 504 (8th Cir. 2017)(affirming summary judgment in favor of defendant where the plaintiff "failed to provide probative evidence that [the defendant] used an [ATDS], or a prerecorded or artificial voice to make calls to his cell phone, an essential element of his claim."). Although the *Facebook* decision will not conclusively resolve the claim for receiving "prerecorded or artificial voice" calls, it will conclusively resolve whether a tenable ATDS claim exists.

Further, a stay in this case pending the Supreme Court's decision in *Facebook* will "avoid exhausting judicial resources" and will conserve the parties' resources. The deadlines to

complete written discovery, expert disclosures, and depositions, are all concluded. The next significant deadline is the motion for class certification deadline of November 6, 2020. The dispositive motion deadline is in January 2021. The Supreme Court's decision in *Facebook* will clarify the law before the parties expend significant time and effort filing and briefing motions to certify a class and for summary judgment and will aid the court's determination of those motions.

Palmer argues she and the putative class will be prejudiced by the stay because it will indefinitely stay the case and permit KCI from continuing to violate the TCPA. (Filing No. 53 at pp. 11-12). However, Palmer has not identified any personal continuing harm from KCI, as she testified during her deposition that the calls from KCI ended in June 2019. (Filing No. 60-1). See *Burnett v. Ocwen Loan Servicing*, LLC, No. 17 C 3474, 2017 WL 5171226, at *3 (N.D. Ill. Nov. 8, 2017) ("[A] stay in this case will not deprive Plaintiffs of needed relief from the alleged unlawful calls because Plaintiffs do not allege the calls are presently ongoing."). And, although the delay caused by the stay may be significant, it is not indeterminate. Oral argument in *Facebook* is set for December 8, 2020, and a decision would be expected sometime next summer. On balancing judicial and party resources against the relatively minor delay this stay will cause Palmer, the Court finds a stay is appropriate. Upon consideration,

**IT IS ORDERED:**

1. Plaintiff's Motion for Leave to File an Amended Class Action Complaint (Filing No. 44) is denied;
2. Defendant's Motion to Stay (Filing No. 46) is granted;
3. All outstanding deadlines in this case are stayed pending the Supreme Court's decision in *Facebook, Inc. v. Duguid et al.*, No. 19-511.

Dated this 3rd day of November, 2020.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge